UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| ALICIA WAGNON, et al., | No. 2:17–cv–1666–KJN |
|---|---|
| Plaintiffs, | ORDER ON DEFENDANT'S MOTION TO COMPEL IME |
| v. | |
| ROCKLIN U.S.D., et al., | (ECF No. 39.) |
| Defendants. | |

Presently before the court is defendants' motion to compel an independent medical examination under Federal Rule of Civil Procedure 35.[1]  (ECF No. 39.)  Defendants contend plaintiff From has put his mental condition at issue by claiming damages for the emotional, educational, and psychological injuries caused by defendants, and good cause exists for the IME. Plaintiffs do not appear to dispute that From's mental condition is at issue, but instead cite a number of reasons why good cause is lacking, including the remoteness of the exam, the proposed locations, the lack of qualifications of the expert, and the availability of the information from other sources.  (ECF No. 45.)

For the reasons stated at the hearing on August 30, 2022, the court GRANTS defendants' motion and sets certain conditions for the exam, as described below.

---

[1] This case proceeds before the undersigned on the consent of all parties to the jurisdiction of a magistrate judge per 28 U.S.C. § 636(c)(1).  (See ECF Nos. 23, 24.)

1

**Background**

Plaintiffs allege that in 2016, a Rocklin U.S.D. bus driver created a hostile environment that resulted in bruising and emotional regression in plaintiff From's education and mental health. Plaintiffs raise claims under 42 U.S.C. § 1983, the Americans with Disabilities Act, the Rehabilitation Act, and California law (Battery, Negligence, Negligent Supervision, Unruh and Bane Acts). Damages alleged include emotional distress, pain and suffering, and medical expenses. Plaintiff From has significant intellectual and physical disabilities, so his mother Alice Wagnon acts as his conservator for this suit. (See ECF No. 1.)

Plaintiffs filed this case in 2017, and between 2017-2021, the court considered two rounds of defendants' motions to dismiss before defendants filed an answer. (See ECF No. 23.) Thereafter, the parties consented to the jurisdiction of a magistrate judge for all purposes and the case was reassigned. (ECF No. 24.) The undersigned entered a scheduling order setting the close of fact discovery for September 2, 2022, expert discovery for December 16, 2022, and law and motion for March 16, 2023. (ECF No. 28.)

During the course of discovery, plaintiff Wagnon's responses to certain interrogatories identified 17 symptoms she said began after the bus driver's alleged actions, and a 2017 report from plaintiffs' psychological expert Dr. Baladerian cites these symptoms in her analysis. (See ECF No. 39; see also ECF No. 41 at Ex. A and B and sealed event at ECF No. 44.) Based on these facts, defendants seek permission for their expert, psychiatrist Dr. Greene, to conduct an independent medical examination of From. (ECF No. 39.) Plaintiffs opposed, and the matter was set for an August 30, 2022 hearing before the undersigned. (Id.)

**Legal Standards**

Fed. R. Civ. P. 35 grants a party the ability to have a physical or mental examination conducted by a "suitably licensed or certified examiner" on "a party whose mental or physical condition . . . is in controversy." "This means, for example, 'that a parent or guardian suing to recover for injuries to a minor may be ordered to produce the minor for examination.'" Sali v. Corona Regional Medical Center, 884 F.3d 1218, 1223 (9th Cir. 2018), quoting FRCP 35 advisory committee's note to 1970 amendment. Courts often order plaintiffs claiming emotional distress

damages to undergo an IME when one or more of the following factors exist: "(1) the complaint includes a claim for intentional or negligent infliction of emotional distress; (2) the plaintiff alleges a specific mental or psychiatric injury or disorder; (3) the plaintiff claims unusually severe emotional distress; (4) plaintiff offers expert testimony to support the claim of emotional distress; or (5) the plaintiff concedes that her mental condition is 'in controversy' for purposes of Rule 35." J.M. v. County of Stanislaus, 2019 WL 6879676 at *8, (E.D. Cal. Dec. 17, 2019).

The exam must happen by court order on good cause. Fed. R. Civ. P. 35(a)(2)(A). "Good cause" factors that courts have considered include the possibility of obtaining desired information by other means, whether plaintiff plans to prove his claim through testimony of expert witnesses, whether the desired materials are relevant, and whether plaintiff is claiming ongoing emotional distress. Halliday v. Spjute, 2015 WL 3988903, *2 (E.D. Cal. June 30, 2015 AWI-GSA) (citing Turner v. Imperial Stores, 161 F.R.D. 89, 97-98 (S.D. Cal. 1995) (expert testimony); Ragge v. MCA/Universal Studios, 165 F.R.D. 605, 608 (C.D. Cal. 1995) (ongoing emotional distress); Schlagenhauf v. Holder, 379 U.S. 104, 118-19 (1964) (availability by other means).

If an examination is ordered, Rule 35 requires the court order "specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." "Courts have discretion in setting appropriate conditions for a physical or mental examination depending on the facts and circumstances of each case." Newman v. San Joaquin Delta Community College District, 272 F.R.D. 505, 511 (E.D. Cal. Feb. 15, 2011).

**Parties' Arguments**

At its core, defendants contend Dr. Greene should be allowed to conduct the IME in order to level the playing field. Defendants note that the complaint places From's mental state at issue, good cause exists for the exam, and they are willing to stipulate to certain protections for plaintiffs so as not to traumatize Mr. From. Defendants argue that without a counter expert they will be unfairly prejudiced, as plaintiffs can present Dr. Balderian's testimony, but defendants would have no similar support for their defenses. (ECF No. 39.)

Plaintiffs contend good cause is lacking, noting From is now 24 years old, is non-verbal, cannot read or write, and has the cognitive abilities of an 18 month to 2-year-old child. Plaintiffs

3

argue that because From's symptoms have mostly resolved given the amount of time that has passed, because of From's limited cognitive abilities, and because he is no longer in the same routine as he was back in 2017, it is unlikely Dr. Greene's exam will yield any fruitful information.  Plaintiffs also challenge whether Dr. Greene is qualified, that despite his "impressive resume," noting he has no experience working with individuals with significant cognitive abilities who are also non-verbal.  Finally, plaintiffs contend there are other avenues for defendants to obtain the information they seek, including examining the numerous documents already in possession by the school district (IEP plans, health records, and the like), the information gleaned from defendants' deposition of Wagnon, and any interviews defendants could conduct with their own employees.  Thus, plaintiffs contend that "given the unique circumstances," no good cause exists for the court to order the IME.  (See ECF No. 45.)

**Analysis – At Issue and Good Cause**

At the outset, the court finds plaintiffs have put From's mental state at issue, given the fact that they plan to produce their expert Dr. Balderian to support their damages claim and given plaintiffs appear to concede this point.  See, e.g., J.M., 2019 WL 6879676 at *8.  Turning to good cause, the court is sensitive to plaintiffs' arguments, but on the whole agrees with defendants' contentions and finds good cause for the IME.

Plaintiffs' main concern appears to concern the fruitfulness of any exam.  As discussed at the hearing, the court is well aware of the potential that Dr. Greene may not uncover any lasting emotional trauma, given that 6 years have passed since the alleged incident.  However, plaintiff Wagnon does not specifically state that From's trauma has completely resolved, but instead states the symptoms "appear to have resolved after approximately 3 years with occasional flareups still continuing."  (See ECF No. 44, Ex. A, *8 (emphasis added).)  Wagnon also recognizes that From has not been asked or required to face defendant since the incident.  Thus, it is possible Dr. Greene's exam may yield few results, or possible that when reexamined, From may experience a flareup.  Either outcome affects the case, and so defendants should be allowed to probe this area via their expert's examination.  See, e.g., Hill v. Fairfield Police Department, 2017 WL 1198510 at *2 (E.D. Cal. Mar 31, 2017) ("Plaintiff here appears to have had multiple pre-existing mental

conditions. Even if plaintiff only claims that his PTSD was aggravated by the incident, defendants are entitled to explore plaintiff's psychiatric condition to determine whether the alleged aggravated symptoms are truly attributable to the incident and PTSD, or whether there are other unrelated causes for such alleged symptoms.").

Beyond this fact, the court notes other issues supporting a finding of good cause. First, it would unduly hamper defendants' defense of their case if plaintiffs were allowed to offer their own expert's testimony but defendants be disallowed a potentially-competing report. See, e.g., Nguyen v. Qualcomm Inc., 2013 WL 3353840, at *7 (S.D.Cal. July 3, 2013) ("A defendant should have a balanced opportunity to assess the plaintiff's allegations and proof concerning emotional distress damages, and a plaintiff's chosen expert should not be the only expert who ever actually examined the plaintiff."). Second, the court agrees that defendants' expert should be required to study up on From's history by examining the universe of available discovery, including from plaintiff Wagnon's deposition. However, this should not act as a bar to defendants, given that the scope of Dr. Greene's questioning will delve into issues beyond what may be available in the documents. See, e.g., Franco v. Boston Scientific Corp., 2006 WL 3065580, at *2 (N.D. Cal. Oct. 27, 2006) (declining to limit the scope of questioning where the examinee's history was lengthy and predated the alleged events). Third, defendants' time has yet to run out with discovery matters, given discovery is still open. (See ECF No. 28.) Fourth, while Dr. Greene's lack of experience working with younger, non-verbal patients may be a fruitful avenue for attack at a Daubert hearing or on cross-examination before the jury, his resume shows he is a qualified, licensed professional for purposes of defendants' Rule 35 motion. See, e.g., Newman, 272 F.R.D. 505 (finding defendant's proposed examiner was qualified under the Rules despite plaintiff's attack on the doctor's lack of specific specialty, given the doctor was a licensed psychologist with significant experience). Thus, these concerns of plaintiffs do not affect the court's finding of good cause.

**Scope of the Exam**

In addition to findings on the 'at issue' and 'good cause' prongs, Rule 35 requires the court order to "specify the time, place, manner, conditions, and scope of the examination, as well

5

as the person or persons who will perform it."

As to the date and length of the exam, counsel for the parties agreed to confer after discussion with plaintiff Wagnon and Dr. Greene.  When the parties have agreed on these (and any other) parameters, they shall submit a stipulation and proposed order to the court for signature.

Defendants have agreed to be flexible on the location, and after discussion with the parties, it appears the best place to conduct the exam will be at plaintiffs' home.

The court will not set limitations on the kinds of tests Dr. Greene will be allowed to conduct.  See, e.g., Newman, 272 F.R.D. 505 (declining to limit the kinds of tests proposed without evidence that certain tests will be dangerous to the examinee).  Further, no specific limits are set on Dr. Greene's questioning of Wagnon concerning From's history.  However, defendants are cautioned that Dr. Greene's exam shall not be harassing to plaintiffs and shall not act as a second deposition.  Thus, to the extent Dr. Greene can conduct any investigation of From's history prior to the exam, so as to lessen the burden on Wagnon, the doctor shall do so.

Finally, defendants had previously stipulated to allowing Wagnon to terminate Dr. Greene's exam if at any time she feels, in good faith, that the exam is overly traumatizing to her son.  Counsel for plaintiff shall review this good faith standard with Wagnon before the exam and shall make her aware that if the exam is ended early, it will be rescheduled for a future date.  However, if the exam is prematurely terminated, it will be probably rescheduled to continue on a future date.  The court will endeavor to make itself available the day of the exam, should any good faith disputes arise requiring court intervention.

**ORDER**

It is HEREBY ORDERED that defendants' motion to conduct an independent medical exam of plaintiff From (ECF No. 39) is GRANTED on the conditions outlined in this order.

Dated:  August 30, 2022

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

wagn.1666