1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ALICIA WAGNON, et al.,                          No.  2:17–cv–1666–KJN

12                     Plaintiffs,                     ORDER ON DEFENDANTS' MOTION FOR
                                                       PARTIAL SUMMARY JUDGMENT
13          v.
                                                       (ECF No. 59.)
14    ROCKLIN UNIFIED SCHOOL
      DISTRICT, et al.,
15
                     Defendants.
16

17          Plaintiffs Alicia Wagnon and her son Sullivan From brought suit against defendants

18    Rocklin Unified School District ("Rocklin USD"), Placer County Office of Education ("Placer

19    County"), and David Hawkins.  Plaintiffs maintain claims for excessive force under 28 U.S.C.

20    § 1983; disability discrimination under the Americans with Disabilities Act and § 504 of the

21    Rehabilitation Act; the California Bane Act (Cal. Civ. Code § 52.1); and battery and negligence.[1]

22    (ECF No. 1.)  Defendants now move for partial summary judgment and plaintiffs oppose.  (ECF

23    Nos. 59, 63, 67.)

24          For the reasons set forth below, the court GRANTS summary judgment in favor of

25    defendant regarding plaintiff Wagnon's personal claims and DENIES the remainder of

26    ───────────────────────────

27    [1] This case is before the undersigned pursuant to 28 U.S.C. § 636(c) for all purposes, including
      the entry of judgment, pursuant to the consent of all parties.  (ECF Nos. 23, 24.)  Previously, the
      assigned district judge dismissed the negligence, negligent supervision, Unruh Act, and Bane Act
28    claims against Rocklin USD and Placer County.  (See ECF No. 22.)

1

1    defendants' motion.

2    **I.      BACKGROUND**

3            **Undisputed Facts**

4            Plaintiff Sullivan From has cerebral palsy and is intellectually and physically disabled.

5    (See ECF No. 1, ECF No. 1 at ¶ 9.)  He is also nonverbal, and would sometimes use maladaptive

6    behaviors to communicate.  (Id.; see also ECF No. 65-2 (decl. Hyatt), Ex. N (Conn depo.), 62:7-

7    21.)  In 2016, From qualified for special education services and, pursuant to his Individualized

8    Education Plan ("IEP"), had been assigned to a special day class for students with severe multiple

9    disabilities.  (ECF No. 1 at ¶ 10.)

10           Pursuant to his IEP and a Behavior Intervention Plan, From received transportation

11   services to and from school.  The bus ride was approximately one hour long in the morning and

12   1.5 hours long in the afternoon; the district video recorded each trip.[2]  (See ECF No. 1 at ¶¶ 12,

13   16.)  During the relevant period, defendant Hawkins was the bus driver who transported From to

14   and from school each day.  (See ECF No. 59-3 (decl. Wieckowski), Ex. A (Hawkins depo.) at

15   108:10-18.)  On the bus, From would sit in the first row on the right side and was restrained into

16   the seat for his safety.  (Id.)  From's restraint consisted of a four-point harness that attached to the

17   back of the seat, with hooks at shoulder and waist levels that connected to a vest From was

18   already wearing when he boarded the bus.  (Id.)  Hawkins would position From in his seat, attach

19   the right shoulder harness first, then the left shoulder harness, then the waist harness.  (Id. at

20   119:2-16.)  The harness was intended to ensure From could not fall out of his seat or otherwise

21   get out of his seat on his own during the bus ride.  (See ECF No. 1 at ¶ 9.)  There was, however, a

22   certain amount of slack in the harness that allowed From some freedom of movement.  (ECF No.

23   59-3 Ex. A at 130:23-131:23; see also ECF No. 63-1 (decl. Wagnon) at ¶ 3.)  Aside from an

24   incident on September 28, 2016, From never became injured while seated and secured in his

25   harness.  (ECF No. 59-3, Ex. A, at 132:16-19.)

26   _____

27   [2] The parties dispute how many videos were preserved for this litigation and whether the district
     spoliated this evidence.  Despite this disagreement, there appear to be six videos that were
     provided to plaintiffs in discovery.  None of the videos were submitted to the court alongside this
28   motion.

1  **Facts In Dispute**[3]

2       Hawkins contends that because of the slack in the harness, From could and occasionally

3  would lean out into the aisle of the bus; Wagnon contends the slack allowed From to reach into

4  the aisle but not fully lean out.  (Cf. ECF No. 59-3, Ex. A, at 130:23-131:9; with ECF No. 63-1 at

5  ¶ 3.)  Hawkins believed it was unsafe for From to lean against the harness straps.  (ECF No. 59-3,

6  Ex. A, at 131:10-19; 159:5-15.)  Hawkins also believed From had shoulder issues that would

7  cause it to pop out of the joint; Wagnon contends that though From had surgery in 2015 after

8  suffering a shoulder injury, by 2016 his shoulder had healed and would not pop out of socket.

9  (Cf. id. at 109:12-24; with ECF No. 63-1 at ¶ 2.)  Hawkins stated that when From would lean out

10  of the harness, he would put out his hand and push From back into the seat so that From was not

11  leaning against the harness.  (ECF No. 59-3, Ex. A, 131:24-132:11.)  In doing so, Hawkins did

12  not believe he was using any amount of force; Wagnon contends that, according to video

13  recordings she viewed, Hawkins appeared frustrated by From's actions, and Hawkins used

14  unnecessary force in pushing From into the seat as a form of punishment.  (Cf. id.; with ECF No.

15  63-1 at ¶ 4.)

16       On the morning of September 28, 2016, Wagnon received a message from a school

17  district official that From had a bruise on his upper right thigh.  (ECF No. 64-2, Ex. C (Wagnon

18  depo.) at 101:10-21.)  From did not have the bruise in the morning when he boarded the bus, and

19  it was discovered shortly after From arrived at school.  (Id. at 101:10-21.)  That evening, Wagnon

20  examined the bruise, noting it was six or seven inches in length and approximately four inches

21  wide with "broken blood vessels that began to emerge around the hot white center."  (Id. at 103:6-

22

23  _____

[3] Certain facts are presented in the background section for the sake of a complete record.  In the
24  analysis section, most of these facts are construed in a light most favorable to the non-moving
party—here, plaintiffs.  Anderson, 477 U.S. at 255.

25       However, at times plaintiffs attempt to create disputes in the evidence by pointing to
portions of Wagnon's deposition and declaration that are merely her opinions of Hawkins's
26  intent.  Further, plaintiffs' counsel has taken considerable—unacceptable—liberties with certain
portions of the evidence (to be addressed in the evidentiary objections section below).  These
27  "facts", though repeated in the background section, will not be relied upon in the analysis section
below.  Bryant, 289 F.3d at 1167 (noting courts may not rely on statements of fact lacking in
28  evidentiary support).

23.)

    In early October, Wagnon viewed recordings from the bus camera for the September 26, 27, and 28, 2016 dates at Rocklin USD's Transportation Office.  (See ECF No. 1 at ¶ 14.) Wagnon observed what she argues was Hawkins taking discriminatory actions in reaction to From's exhibiting disability-related symptoms—actions Wagnon characterizes as being motivated by an obvious animus toward From because of his disability and creating a hostile and degrading environment.  (See Plaintiffs' Statement of Disputed Facts, ECF No. 65-2, at ¶¶ 10, 27, citing ECF No. 64-2, Ex. C, at 130-133.)  Wagnon contends these acts of Hawkins include:

-    Speaking in a demeaning tone (ECF No. 64-2, Ex. C, at 131:1-6);

-    Reprimanding From "right up in his face" (Id. at 131:19-22);

-    Saying things like "you almost look like you know what you're doing", "we're not going to be friends anymore if you keep being bad", "quit being such a brat, you know better", and "you're just being a brat" (Id. at 132:1-8);

-    Stating to another school staff member that From was "a pisser this morning" and was "the one who never learns anything"[4] (Id. at 133:14-21); and

-    Upsetting From (and the other children) on one occasion when Hawkins exited the bus during a stop and yelled "bye!" to the students, feigning abandonment (Id. at 137:1-17).

(See ECF No. 65-2 at ¶¶ 11-18.)  Thereafter, From ceased riding the bus to school.  (ECF No. 64-2, Ex. C, 134:11-135:1.)

    Near the end of October of 2016, Wagnon participated in an IEP Team meeting concerning From's bus rides.  Attending this meeting was (among others) Sarah Brunkhorst, a board-certified behavioral analyst and behavior specialist employed by Placer County Department of Education.  (ECF No. 64-2, Ex. D (Brunkhorst depo.), at 4:25, 10:13-14; 15:4; 36:8-14.)

///

---

[4] Plaintiffs also contends Hawkins at one point said to another staff member "take [From] please!"  (ECF No. 65-2 at ¶ 16, citing ECF No. 64-2, Ex. C, at 133.)  This statement does not appear to be in the record at the location counsel cited, nor does it appear in a search of Wagnon's deposition transcript.  This fact will not be considered.  Simmons, 609 F.3d at 1017 (noting that the court is not required to scour the record in search of a genuine disputed material fact).

1    Later, and as part of this litigation, Brunkhorst reviewed six days of bus recordings

2  surrounding the September 28, 2016 event, as well as From's IEP and various other documents;

3  Brunkhorst then provided defendants with a non-retained expert opinion.  (ECF No. 64-2, Ex. D,

4  at 6:14-19; 38:15-17.)  Brunkhorst stated at her deposition that, after viewing the recordings, she

5  observed and concluded:

- On an occasion when From was knocking on the window, Hawkins was heard saying to From "stop it, not funny" in an unkind tone of voice (Id. at 72:1-4);

- Another time, Hawkins reacted to the knocking by stating "Sullivan, get your hand off the window. We aren't going to be friends anymore if you keep being bad."  Hawkins then pulled From's arm down and said "[y]ou're not funny, young man, not at all. You need to stop" (Id. at 75:4-7);

- Once, Hawkins got within 12 inches of From's face and spoke to From, but Brunkhorst could not hear Hawkins's words.  Hawkins appeared "visibly irritated" and "annoyed" at From's behavior in these instances.  (Id. at 55:13-15; 77:3-15);

- Other times, Hawkins is heard calling all of the children on the bus "brats";

- On another occasion, when From pinched Hawkins as Hawkins passed by in the aisle, Hawkins failed to implement reactive strategies that would have been employed by trained staff (ECF No. 64-2, Ex. D, at 72:19-73:5); and

- On September 28, 2016, Hawkins was seen stopping the bus and "pushing [From] back up into his seat."  There were no safety reasons for Hawkins to push From back into his seat (Id. at 56:15-19; 57:13-15; 58:6-15;80:6-21).

19  Despite this meeting and other communications with the school, Wagnon did not believe the

20  district addressed her concerns and continued transporting From to school herself.  (ECF No. 64-

21  2, Ex. C, 134:14-16.)  Generally speaking, although the school expected that everyone interacting

22  with From would do their best to implement the IEP accommodations (ECF No. 64-2, Ex. C,

23  53:22-54:2), plaintiffs maintain Hawkins did not do so and was not adequately trained to do so.

24  (See ECF No. 59-3, Ex. A, at 77:18-24 (wherein Hawkins admitted never having seen the

25  school's "Transporting Passengers with Special Needs" document); Id. at 79:12-23 (wherein

26  Hawkins failed to recall being trained on concepts in the training manual); Id. at 80:2-21 (wherein

27  Hawkins noted he was trained "in a general matter" on certain aspects of working with children

28  with special needs).)

5

**Procedural Posture**

Plaintiffs filed their complaint in August of 2017, asserting the following claims:

(I)     a Section 1983 Fourth Amendment claim, against defendant Hawkins;
(II)    ADA Discrimination against Rocklin USD and Placer County;
(III)   a Rehabilitation Act § 504 claim, against Rocklin USD and Placer County;
(IV)    Battery, against Hawkins;
(V)     Negligence, against Hawkins and Rocklin USD;
(VI)    Negligent Supervision, against Rocklin USD;
(VII)   an Unruh Act claim (Cal. Civ. Code § 51), against Rocklin USD; and
(VIII)  a Bane Act claim (Cal. Civ. Code § 52.1) against Hawkins and Rocklin USD.

(ECF No. 1.)

Defendants moved to dismiss all but the battery and two negligence claims; the assigned district judge denied the motion in its entirety.  (ECF Nos. 6, 12.)  Defendants then requested dismissal of the Battery, Negligence, Negligent Supervision, Unruh Act, and Bane Act claims on Eleventh Amendment grounds.  (ECF No. 15.)  The district judge dismissed these claims against Rocklin USD and Placer County, but denied the motion as against Hawkins in his personal capacity.  (ECF No. 22.)

Thus, the parties proceeded to discovery on the following claims:

(I and VIII) From's Section 1983 Fourth Amendment claim and
            associated Bane Act claim, as against defendant
            Hawkins in his individual capacity;

(II and III) Plaintiffs' disability discrimination claims under the ADA
            and § 504, as against Rocklin USD and Placer County;

(IV and V)  From's Battery, and From and Wagnon's Negligence
            claims, against defendant Hawkins.

Defendant Hawkins now moves for summary judgment on the Fourth Amendment and Bane Act claims; all defendants argue Wagnon has no standing to assert any of her claims; and plaintiffs oppose.  (ECF Nos. 59-1, 63, 75.)

## II.     LEGAL STANDARDS FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure (the "Rule(s)") allows for a party to move for summary judgment by "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Summary judgment (i.e. judgment as a matter of law) is proper when the movant demonstrates that no genuine issue exists as to the material

6

facts of the claim.  Id.  A dispute is "genuine" if there is sufficient evidence for a reasonable jury

to return a verdict for the non-moving party.  Freecycle Sunnyvale v. Freecycle Network, 626

F.3d 509, 514 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

A fact is "material" if it might affect the outcome of the suit under the governing law.  United

States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009) (citing Anderson, 477 U.S. at 248).  A

shifting burden of proof governs motions for summary judgment.  In re Oracle Corp. Sec. Litig.,

627 F.3d 376, 387 (9th Cir. 2010).  The framework is as follows:

>    Initially, the party seeking summary judgment bears the burden identifying the legal basis

for the motion and the supporting portions of the declarations, pleadings, and discovery.

Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986)); see also Rule 56(c)(1)(A)-(B) (noting the requirements for

supporting factual positions).  For claims "[w]here the moving party will have the burden of proof

on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact

could find other than for the moving party."  Id.  However, for claims where the moving party

will not bear the burden of proof on an issue at trial, the movant may prevail by "merely by

pointing out that there is an absence of evidence to support the nonmoving party's case."  Id.  If a

moving party fails to carry its burden at this step, then the opposing party "has no obligation to

produce anything, even if the non-moving party would have the ultimate burden of persuasion."

Nissan Fire v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).

>    If the moving party meets this initial burden, the opposing party must then establish that a

genuine issue as to any material fact actually exists.  Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986).  A genuine dispute of material fact can be demonstrated

by "(A) citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations . . . , admissions,

interrogatory answers, or other materials; or (B) showing that the materials cited [by the moving

party] do not establish the absence or presence of a genuine dispute, or that an adverse party

cannot produce admissible evidence to support the fact."  Rule 56(c)(1)(A)-(B); see also Estate of

Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) ("[The opposing party] cannot

rest upon the mere allegations or denials of its pleading, but must instead produce evidence that sets forth specific facts showing there is a genuine issue for trial.") (citing Rule 56(e)).

The parties are obliged to identify material facts, and the court is not required to scour the record in search of a genuine disputed material fact.  Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010) (overruled on other grounds); see also Rule 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").  In resolving a motion for summary judgment, the evidence of the opposing party is to be believed, and all justifiable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at 255.  While a "justifiable inference" need not be the most likely or the most persuasive inference, it must still be rational or reasonable.  See Id. Further, a motion for summary judgment may not rely on "the mere existence of a scintilla of evidence" (Anderson, 477 U.S. at 252); evidence that is "'merely colorable' or 'is not significantly probative" (Id. at 249-50); "some metaphysical doubt as to the material facts" (Matsushita, 475 U.S. at 586); or a party's "conclusory statement [regarding] a genuine issue of material fact, without evidentiary support" (Bryant v. Adventist Health Sys./W., 289 F.3d 1162, 1167 (9th Cir. 2002)).  "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Rule 56(c)(2).

Fundamentally, summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts."  Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015); see also Anderson, 477 U.S. at 255 (noting courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.").

### III.    PARTIES' ARGUMENTS

Defendants contend:  (A) the evidence fails to show that Hawkins acted unreasonably in restraining From, and so the § 1983 and Bane Act claims fail; and (B) plaintiff Wagnon suffered no injury attached to her ADA, Rehabilitation Act, and Bane Act claims.  (ECF No. 59-1.)

///

Plaintiffs oppose, contending:  (A) a genuine issue of material fact exists concerning whether defendant Hawkins used unreasonable force against From, and so the § 1983 and Bane Act claims should go before a jury; (B) plaintiff Wagnon has standing to assert her individual claims under the ADA, Rehabilitation Act, and Bane Act against all defendants.  Plaintiffs also contend:  (i) defendants' motion for summary judgment should be denied in its entirety as untimely, and (ii) defendant spoliated evidence by failing to preserve all videos from the bus's cameras during the relevant period.  (ECF No. 64-1.)

Defendants contend in reply that:  (A) case law from other circuits is factually on point, and so no Fourth Amendment violation can legally lie here (nor any associated Bane Act claim); and (B) plaintiff Wagnon lacks standing on the Bane Act claim, as latched to the Fourth Amendment claim, due to a lack of injury in fact.  Defendants also argue:  (i) their motion is timely because of the operation of the scheduling order; (ii) plaintiffs' spoliation argument is untimely, as she never moved for sanctions; and (iii) certain portions of plaintiffs' opposition should be disregarded based on objections lodged in response to plaintiffs' statement of disputed facts.  (ECF No. 65.)

The court requested clarification on the parties' arguments concerning, among other things, the scope of plaintiff Wagnon's claims as asserted in the complaint.  (ECF No. 66.)  In the parties' joint statements, plaintiffs argued the complaint intended to assert ADA and § 504 claims on Wagnon's behalf against Rocklin USD and Placer County, and defendants contended their standing arguments apply to any ADA and § 504 claims brought by Wagnon in the same way as arguably apply to the Bane Act (4th Amendment) claim.[5]  (ECF Nos. 67, 75.)

---

[5] Defendants Rocklin USD and Placer County also moved for summary judgment on the ADA and § 504 claims on a failure to exhaust argument.  (ECF No. 59 at Sections B and C.)  However, all parties agree this argument has been foreclosed by the Supreme Court's recent decision in Perez v. Sturgis Public Schools, 143 S. Ct. 859 (2023).  (ECF No 67.)  Further, defendant Hawkins moved for summary judgment on the Unruh Act claim.  (ECF No. 59 at Section D.)  However, as noted above and as conceded by the parties, this claim was not asserted against him and was dismissed against Rocklin USD, so it is no longer cognizable.  (See ECF Nos. 22, 67.)  For judicial efficiency, the court refrains from commenting further on these issues.  Additionally, the parties acknowledged that, no matter the outcome of defendants' motion, the battery and negligence claims will be ripe for trial.  (ECF No. 67 at ¶ 4.)

1  **IV.    DISCUSSION**

2        i.      **The Timeliness of Defendants' Summary Judgment Motion**

3        Before addressing defendants' contentions on the merits, the court considers plaintiffs'

4  argument that the motion for summary judgment should be denied in its entirety as untimely.

5  Plaintiffs cite Rule 56, which states that "a party may file a motion for summary judgment at any

6  time until 30 days after the close of all discovery."  Rule 56(b) (emphasis added).  Plaintiffs then

7  note that discovery closed on December 16, 2022, defendants' motion was not filed until

8  February 2, 2023, and although the scheduling order sets March 16, 2023 as the last day for any

9  law and motion matters to be heard, it did not extend the 30 day deadline from Rule 56.  (See

10  ECF No. 28 at 2-3; ECF No. 59.)

11        Plaintiffs are correct about the text of Rule 56 and the scheduling order in place.

12  However, plaintiffs miss that Local Rule 230 amends the deadlines as it applies to this issue.

13  Under Local Rule 230(b), any motions are to be set for a hearing at least 35 days out, and implicit

14  in this is an allowance for a party to file a motion up through the date of that deadline.  Thus,

15  given that the undersigned typically hears civil motions on Tuesdays at 9:00 a.m., and given that

16  defendants set their motion for a hearing on March 14, 2023, defendants were permitted to file the

17  motion any time up through February 7, 2023.  The motion was filed February 2, and so is timely

18  under the rules.

19        To the extent plaintiffs could argue that Rule 56(b) and Local Rule 230(b) are not

20  mutually exclusive, plaintiffs are technically correct, as defendants could have filed their motion

21  within 30 days of the close of discovery (January 16, 2023) and set it for a March 16th hearing.

22  However, such a cramped reading of the rules sidesteps Rule 1's requirement for a just resolution

23  of the case.  To the extent plaintiffs could reasonably make this argument, the court finds

24  ambiguity in the operation of the rules and scheduling order on this matter.  Thus, good cause

25  exists to grant defendants the right to have filed their summary judgment motion when they did.

26        For these reasons, the court denies plaintiffs' request to find defendants' motion untimely.

27  ///

28  ///

1          **ii.      Plaintiffs' Spoliation Argument**

2          In the opposition brief, plaintiffs assert in summary of facts section that Rocklin USD

3    "spoliat[ed] crucial bus surveillance videos."  Plaintiff contends the district's director of

4    transportation stated in deposition that after the incident on September 28, 2016, he retrieved the

5    previous six days of bus surveillance videos from all three or four cameras on the bus.  Despite

6    this fact, defendants only produced videos from one camera for the dates of September 26, 27, 28,

7    29, 30, and October 3.  (ECF No. 64-1 at 10-11.)  Defendants replied to this assertion, noting

8    plaintiff fails to request any relief based on these assertions but simply proclaims the videos to be

9    spoliated.  Further, defendants argue any such arguments are untimely, as plaintiffs failed to raise

10   this issue at any point prior to the filing of the opposition motion.  (ECF No. 65 at 2-4.)  The court

11   briefly addresses this issue, as it feeds into the broader issue of plaintiffs' evidence in support of

12   their motion, portions of which defendants' objected to.

13         A party has a duty to preserve documents or things in its possession, custody or control if

14   it has some notice that the documents or things are potentially relevant to existing or reasonably

15   anticipated litigation.  Leon v. IDX Systems Corp., 464 F.3d 951, 959 (9th Cir. 2006).  The party

16   asserting a spoliation argument has the burden of establishing such a claim.  Ryan v. Editions Ltd.

17   W., Inc., 786 F.3d 754, 766 (9th Cir. 2015).

18         Here, it is not clear what plaintiffs intend to argue when making the spoliation assertions

19   in the opposition brief.  Plaintiffs note there were a number of videos in existence that were not

20   produced in discovery.  They state that only one of the multiple camera angles from the bus rides

21   on September 26 to October 3 were produced by defendants, and no camera angles from

22   September 21-23 were produced.  Plaintiffs cite to the deposition testimony of defendants'

23   director of transportation, whose testimony generally supports plaintiffs' assertions.  (ECF No.

24   64-1, citing ECF No. 63-4 (pl's statement of disputed facts) at ¶¶ 33-38; see also ECF No. 64-2 at

25   Ex. B (depo. Matt Sanchez).)  Defendants do not appear to dispute the fact that these videos

26   remain unproduced, nor do they offer any explanation for why this is.  Thus, it appears on its face

27   that Rocklin USD failed to preserve videos it knew to be potentially relevant to this litigation.

28   The question becomes, what to do about this issue.

1    The answer, from what the court can infer from plaintiffs' opposition briefing, is nothing.

2   Nowhere do plaintiffs seek any kind of relief for this proclaimed spoliation.  More perplexingly,

3   the parties' arguments, as to which videos exist and which do not, appears wholly irrelevant to

4   this motion.  This is because **neither party submitted the videos alongside their briefing, and**

5   **neither appear to rely on the actual videos in making their summary judgment arguments**

6   (instead relying on declarations from witnesses describing the contents of these videos—an issue

7   resolved in the evidentiary objections section below).  The court presumes the parties intend to

8   use at trial the videos that were produced by defendants, but for purposes of the current

9   proceedings, and in the absence of some requested relief by plaintiff, the motion (such that it was

10   made) is denied.[6]  Ryan, 786 F.3d at 766.

11        **iii.       Defendants' Evidentiary Objections; Rule 11 Sanctions**

12    Before turning to the parties' arguments concerning the claims and defenses in this case,

13   the court must resolve one final set of ancillary issues:  that of plaintiffs' evidence cited in support

14   of their opposition briefing.  (See ECF Nos. 65-1 and 65-2.)  Rule 56 allows a party to object to

15   evidence when "the material cited . . . cannot be presented in a form that would be admissible in

16   evidence."  Rule 56(c)(2).  Defendants' assertions generally take one of two forms.  First,

17   defendants argue plaintiffs cite evidence that is irrelevant and otherwise inadmissible due to

18   issues with alleged personal knowledge, hearsay, and other rules of evidence.  Second, defendants

19   contend some statements made in plaintiffs' response to the undisputed facts and in their disputed

20   facts take considerable liberties with the evidence cited to, fail to cite to the correct portions of the

21   evidence relied upon (mainly the deposition transcripts), and in a few cases state the opposite of

22   what the evidence indicates.

23    To the extent defendants attack the content of evidence rather than its form, these

24   assertions duplicate Rule 56 itself because the court disregards irrelevant, indecipherable, vague,

25   or speculative evidence at summary judgment.  See Fed. R. Civ. P. 56(c)(1); Burch v. Regents of

---

[6] Defendants argue plaintiffs' spoliation proclamation, to the extent it can be construed as a motion, is untimely, given that the issue was not raised until inserted in the facts section of plaintiffs' opposition brief.  (ECF No. 65.)  Given that the overarching issue appears of no relevance to the current proceedings, the court declines to take a position on this argument.

1    Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).  As to the allegedly

2    argumentative statements made by plaintiffs in their fact statements, some of defendants'

3    contentions here cannot be resolved at summary judgment because a jury could interpret certain

4    statements in multiple ways.  Stonefire Grill, Inc. v. FGF Brands, Inc., 987 F. Supp. 2d 1023,

5    1034 (C.D. Cal. 2013) (noting that objections that a statement is argumentative or

6    mischaracterizes the record often calls for either a credibility determination unsuited for summary

7    judgment or a look at the underlying evidence itself).

8            However, the court needs to address a specific subset of defendants' arguments:  (a) those

9    having to do with plaintiff Wagnon's declaration and deposition, as compared with the contents

10   of the videos from the bus; and (b) certain representations made by plaintiffs in their opposition to

11   the undisputed facts and in the statement of disputed facts.

12                        **a.  Plaintiffs' Declaration and Deposition vs. the Video Recordings**

13           Plaintiff Wagnon makes the following statement in her declaration:  "The bus surveillance

14   videos show that Hawkins was frustrated with [From] for dropping his backpack on the ground

15   and pushed him back in his seat in what appears to be a form of punishment or an assertion of

16   dominance over [From]."  (ECF No. 63-1 at ¶ 4.)  Plaintiffs then rely on this single statement to

17   support her arguments and oppose many of defendants' contentions in the statement of

18   undisputed facts.  For example, in response to defendants' statement of fact regarding why

19   Hawkins pushed From back up into the seat, plaintiffs simply repeat par. 4 of the declaration and

20   generally cite "Declaration of Wagnon."  (ECF No. 65-1 at ¶ 8.)  Another time, in opposition to a

21   statement regarding Hawkins's actions, plaintiffs simply state:  "His actions are clear in the bus

22   surveillance videos. Declaration of Wagnon."  (Id. at ¶ 10.)  Often, plaintiff Wagnon cites to

23   various portions of her deposition transcript where she described Hawkins's actions and, at times,

24   passed judgment on his intent.  For example, plaintiffs' disputed fact no. 10 states:  "It appeared

25   to Wagnon that Hawkins's actions were motivated by an obvious animus toward S.R.F. as a

26   disabled individual and that he subjected S.R.F. to routine discrimination because of various

27   symptoms manifested from S.R.F. 's disabilities."  (ECF No. 65-2 at ¶ 10.)

28   ///

1    Many of Wagnon's opinions regarding what she thinks Hawkins intended by his actions

2 are just that:  her opinions.  Opinions by witnesses who do not claim an expertise are subject to

3 Rule 701, which requires the opinions to be "rationally based" on the person's perceptions, be

4 "helpful" to the trier of fact, and not rely on "scientific, technical, or other specialized

5 knowledge."  Fed. R. Evid. 701; <u>see also</u> <u>U.S. v. Durham</u>, 464 F.3d 976, 982 (9th Cir. 2006)

6 (reminding that personal knowledge relates to events a witness has perceived through their

7 physical senses and experience, and Rule 701 relates to their opinions "rationally based" on the

8 witness's perception or to their conclusions drawn from such facts").  Nonexpert opinions are

9 "helpful" if they assist a trier of fact to clearly understand the witness's testimony or to determine

10 a fact in issue.  Fed. R. Evid. 701(b).  Axiomatically, this testimony is unhelpful—and thus

11 inadmissible—if it is mere speculation, expresses an opinion of law, or usurps the jury's function.

12 <u>See, e.g.</u>, <u>Nationwide Transp. Fin. v. Cass Info. Sys., Inc.</u>, 523 F.3d 1051, 1060 (9th Cir. 2008)

13 (nonexpert witnesses may not tell finder of fact what result to reach); <u>U.S. v. Freeman</u>, 498 F.3d

14 893, 905 (9th Cir. 2007) (speculative testimony inadmissible); <u>U.S. v. Crawford</u>, 239 F.3d 1086,

15 1090 (9th Cir. 2001) (legal conclusions inadmissible when presented as lay testimony).

16    Plaintiffs' attempt to insert Wagnon's opinion into the statement of facts is unhelpful, as a

17 jury will be quite capable—and in fact would be charged with deciding—whether Hawkins's

18 actions amounted to "discrimination," "animus," "punishment," or "an assertion of dominance"

19 actionable under plaintiffs' claims.  Fed. R. Evid. 701; <u>see, e.g.</u>, <u>B.A.S.A. Trading, Inc. v. SJL</u>

20 <u>Apparel, Inc.</u>, 2017 WL 11631182 at *3 fn. 2 (C.D. Cal. Apr. 13, 2017) (rejecting "paltry

21 assertions" made in a declaration at summary judgment based on the court's review of the video

22 and conclusion that the declarant was expressing an unhelpful lay opinion).  Based on the parties'

23 assertions in this proceeding, it appears some of the videos will be available to view by the jury.

24 The jury will decide how it reads Hawkins's intent based on his actions viewable from the video,

25 his testimony and other relevant, admissible evidence.  Fed. R. Evid. 1002 (under the best

26 evidence rule, "[a]n original writing, recording, or photograph is [generally] required in order to

27 prove its content"); <u>see, e.g.</u>, <u>Mattos v. Walmart</u>, 2020 WL 4805433 at *3 (D. Or. Aug. 18, 2020)

28 (rejecting portions of a witness's testimony at summary judgment for lack of personal knowledge

1    and on the best evidence rule, where the witness was relying on his interpretations of an

2    encounter after viewing the store's security camera footage, and where that footage would be

3    viewable to the jury at trial); Williams v. Baker, 2019 WL 935973 at *3 (E.D. Cal. Feb. 26, 2019)

4    (same outcome on similar circumstances).  For this reason, the court will disregard these

5    statements from plaintiffs when considering the issues subject to defendants' motion for summary

6    judgment.[7]  Fed. R. Civ. P. 56(c)(2).

7                        **b.   Counsel's Representations to the Court**

8             Despite these rulings, the court is disturbed by plaintiffs' overall handling of the fact

9    statements in this motion.  Inherent in the Local Rules, as well as an attorney's professional and

10   ethical duties, is a requirement that assertions made in filings before the court not wholly

11   misrepresent the facts of the case and actually cite to the evidence relied upon.  Here, plaintiffs'

12   counsel has taken considerable liberties in representing the content of certain testimony in the

13   record, and often fails to point the court to the correct portions of the evidence relied upon.  (See

14   ECF No. 63-4 (Plaintiffs' Statement of Disputed Facts).)  For purposes of this section, the court

15   focuses in on counsel's treatment of the deposition testimony of Sarah Brunkhorst, defendants'

16   non-retained expert.  (See, generally, ECF No. 64-2, Ex. D.)

17   _____

     [7] It appears the court has engaged in this exercise for little actual effect as it relates to defendants'
18   motion for summary judgment.  The two issues ripe for resolution in this order are whether
     Hawkins violated the Fourth Amendment's unreasonable seizure prohibition and whether plaintiff
19   Wagnon has standing to bring the claims she asserts.  The former issue operates under an
     objective standard, Tennessee v. Garner, 471 U.S. 1, 7-8 (1985), and the latter focuses on the
20   scope of Wagnon's injuries, Kowalski v. Tesmer, 543 U.S. 125, 129 (2004).  True, there is a
     specific intent element to the Bane Act's prohibition against unreasonable seizures, Reese v. Cty.
21   of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018), but the scope of defendants' arguments
     indicate the Bane Act claim will rise or fall with the 4A claim.  See Garlick v. Cty. of Kern, 167
22   F. Supp. 3d 1117 (E.D. Cal. 2016).  Even defendants' other arguments (now mooted for other
     reasons) did not touch on Hawkins's intent, as the attack on plaintiffs' ADA and § 504 claims
23   dealt with administrative exhaustion.  (See ECF No. 59-1 at 11-15.)  Thus, while Hawkins's
     intent—and Wagnon's opinion thereon—will be of paramount import for the ADA and § 504
24   claims, it appears to be of no consequence for purposes of this motion.
              So why, then, has the court engaged in such a lengthy analysis?  To demonstrate how the
25   parties, and particularly plaintiffs, have added to the court's workload by making irrelevant
     arguments instead of focusing on the issues ripe for a determination at summary judgment.  (See
26   Section (b) below regarding plaintiffs' representations to this court; see also ECF No. 66 at ¶ 1
     (calling for supplemental briefing on the parties' summary judgment arguments that had been
27   dismissed by the district judge years prior).)

28                                              15

Most egregiously, counsel has blatantly mischaracterized Brunkhorst's testimony at the crux of this litigation:  Hawkins's use of force on September 28, 2016.  In plaintiffs' statement of disputed facts, counsel writes:

> In addition, in one of the video recordings, Hawkins <u>forcefully shoves</u> S.R.F. back in his seat while he is leaning forward, even though he was fully harnessed and incapable of getting out of his seat. There were no safety reasons to push S.R.F. back in his seat. Hawkins pushes S.R.F. back in his seat after S.R.F. gets ahold of his backpack and pulls it off the seat next to him onto the ground.

(ECF No. 63-4 at ¶ 18 (emphasis added).)  Counsel only cites "Deposition of Brunkhorst, pp. 56:22–57:15; 79:21–80:21" for support for this "statement of fact."  However, Brunkhorst explicitly stated she at her deposition she "wouldn't say he, like, shoved him, but he pushes him back up into his seat, and I would consider it as more than a brief physical prompt."  (ECF No. 64-2, Ex. D, at 56:17-19.)  Simply, Brunkhorst's testimony not only fails to support counsel's statement of fact that Hawkins "forcefully shoved" From, but explicitly contradicts it.

Additional examples of the mismatch between counsel's "disputed facts" and the actual testimony include:

- A set of "disputed facts" that identifying Hawkins's behavior as "demeaning," as "reprimanding . . . right up in From's face," and as "direct[ing] disability-related epithets and derogatory comments toward [From] when he became angry or annoyed at [From] for exhibiting these behaviors by denigrating his intelligence and singling him out . . . ."  (<u>See</u> Plaintiffs' Statement of Disputed Facts, ECF No. 63-4.)  This description, however, appears to meld Brunkhorst's testimony with plaintiff Wagnon's observations—and as noted above, Wagnon's opinions are inadmissible lay opinions.
- Attribution of other disputed acts to Brunkhorst's testimony regarding Hawkins's statements to another school official (allegedly saying about From that "you almost look like you know what you're doing," "we're not going to be friends anymore if you keep being bad," "quit being such a brat, you know better," "you're just being a brat").  Counsel's description of Brunkhorst's statements do not align with Brunkhorst's actual statements.  Instead, counsel's descriptions appears to attribute to Brunkhorst certain recollections made by Wagnon after reviewing the video footage.  In this portion of the statement of facts, counsel cites Wagnon's deposition, but fails to note the correct parts of the transcript, and fails to distinguish which deponent made which observations.  (<u>See</u> ECF No. 65-2 at ¶ 14.).
- Characterizations of Hawkins's actions by counsel regarding an incident where From pinched Hawkins as Hawkins passed by in the aisle, where counsel wrote that Hawkins reacted by "reprimanding" From instead of

1

2

ignoring the pinch.  However, Brunkhorst only noted Hawkins's "acknowledge[ment]" of the pinch, and did not characterize it as a "reprimand."

3

4   These are just three, generalized examples of plaintiffs counsel's errant conduct in prosecuting

5   this motion.  Counsel's failure to cite to accurate portions of the record, coupled with blatantly

6   argumentative and wholly inaccurate descriptions of the actual testimony relied upon, is found to

7   be in bad faith as a reckless misleading of the court and reckless misrepresentation of the facts.

8   For these reasons, counsel is sanctioned $500.  See Fed. R. Civ. P. 11(b) (allowing for sanctions

9   where an attorney has presented to the court a pleading, written motion, or other paper without

10  making a reasonable inquiry into its legal or factual contentions); Christian v. Mattel, Inc., 286

11  F.3d 1118, 1127 (9th Cir. 2002) (noting the rule's fundamental purpose is "to reduce frivolous

12  claims, defenses or motions and to deter costly meritless maneuvers," and to avoid delay and

13  unnecessary expense in litigation); Mark Indus., Ltd. v. Sea Captain's Choice, Inc., 50 F.3d 730,

14  732 (9th Cir. 1995) (noting the court's inherent power to "discipline the members of the bar who

15  appear before it"); Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648–49 (9th Cir. 1997)

16  (reminding that to impose inherent-power sanctions, a court "must make an explicit finding that

17  counsel's conduct constituted or was tantamount to bad faith."); see also Indiezone, Inc. v. Rooke,

18  720 F. App'x 333, 337 (9th Cir. 2017) (indicating bad faith can be shown where an attorney

19  "recklessly or intentionally misled the court [or] recklessly or intentionally misrepresent[s]

20  facts").  Counsel shall pay this sanction herself, and shall not pass the cost along to her client.

21  Erickson v. Newmar Corp., 87 F.3d 298, 303 (9th Cir. 1996) (noting that when invoking its

22  inherent power, a court must exercise discretion in fashioning an appropriate sanction).

23  **A.  Plaintiff From's Excessive Force and Associated Bane Act Claims**

24  **Legal Standards - § 1983, Fourth Amendment Excessive Force, Qualified Immunity**

25  The Fourth Amendment can apply to excessive force claims based on the particular

26  actions of public school officials.  Preschooler II v. Clark County School Bd., 479 F.3d 1175,

27  1180–81 (9th Cir. 2007).  Under the Fourth Amendment, individuals acting under color of law

28  may use an amount of force that is objectively reasonable for the situation, given the totality of

the circumstances.  <u>Tennessee v. Garner</u>, 471 U.S. 1, 7–8 (1985).  Determining the objective

reasonableness of a particular use of force involves balancing the degree of force used against the

government interest at stake.  <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989).  The goal is to

determine if the force used was "greater than is reasonable under the circumstance."  <u>Santos v.</u>

<u>Gates</u>, 287 F.3d 846, 854 (9th Cir. 2002) (citing <u>Graham</u>, 490 U.S. at 396).  "The reasonableness

of a particular use of force must be judged from the perspective of a reasonable officer . . ., rather

than with the 20/20 vision of hindsight."  <u>Graham</u>, 490 U.S. at 396.  This determination is

normally a question for the jury, because it requires "resolution of disputed questions of fact[,]

determinations of credibility, [and] the drawing of inferences."  <u>Santos</u>, 287 F.3d at 852

("[E]xcessive force claims typically boil down to an evaluation of the various accounts of the

same events.  Thus, the circumstances surrounding those events may be critical to a jury's

determination of where the truth lie.").  Summary judgment should be granted sparingly in

excessive force cases.  <u>Glenn v. Washington County</u>, 673 F.3d 864, 871 (9th Cir. 2011).

  The doctrine of qualified immunity protects government officials from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known."  <u>Pearson v. Callahan</u>, 555 U.S. 223, 231

(2009).  "'[C]learly established law' should not be defined 'at a high level of generality,'" and

must be "be particularized to the facts of the case."  <u>White v. Pauly</u>, 137 S. Ct. 548, 662 (quoting

<u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 742 (2011)).  Thus, for a right to be clearly established, the

law "must ordinarily have been earlier developed in such a concrete and factually defined context

to make it obvious to all reasonable government actors, in the defendant's place, that what he is

doing violates federal law.  <u>Shafer v. Cnty. of Santa Barbara</u>, 868 F.3d 1110, 1117 (9th Cir.

2017).  While a case need not be "directly on point" to show that a right is clearly established, it

must make the question "beyond debate."  <u>Kisela v. Hughes</u>, 138 S. Ct. 1148, 1152 (2018).  "It is

the plaintiff who bears the burden of showing that the rights allegedly violated were clearly

established."  <u>Shafer</u>, 868 F.3d at 1118.  However, "[i]f a genuine issue of material fact exists that

prevents a determination of qualified immunity at summary judgment, the case must proceed to

trial."  <u>Serrano v. Francis</u>, 345 F.3d 1071, 1077 (9th Cir. 2003).

1          **Analysis**

2                  Defendant Hawkins asserts summary judgment is appropriate on plaintiff From's

3       excessive force claim, brought under 28 U.S.C. § 1983 as a Fourth Amendment claim (and

4       associated claim under the Bane Act, Cal. Civ. Code. § 52.1).  Hawkins argues that based on the

5       undisputed facts, his use of force was minimal and wholly proportionate to the needs presented at

6       the time.  The parties note the following undisputed facts in support:

7                  -    From has cerebral palsy, is intellectually and physically disabled, is also

8                        nonverbal, and would sometimes use maladaptive behaviors to communicate. (See

9                        ECF No. 1 at ¶ 9; see also ECF No. 65-2, Ex. N, 62:7-21).)

10                 -    During the hour+ bus rides to and from school each weekday, From was harnessed

11                       into his seat so that he could not fall out or otherwise get out of his seat on his

12                       own.  (See ECF No. 1 at ¶ 9.)  There was however a certain amount of slack in the

13                       harness that allowed From some freedom of movement.  (ECF No. 59-3, Ex. A, at

14                       130:23-131:23; see also ECF No. 63-1, ECF No. 63-1 at ¶ 3.)

15      Hawkins also points to the certain facts supporting his position, each of which were disputed by

16      plaintiff From.  These include:

17                 -    Because of the slack in the harness, From could and occasionally would lean out

18                       into the aisle of the bus.  (ECF No. 59-3, Ex. A, at 130:23-131:9.)

19                 -    Hawkins understood From to have had shoulder issues that would cause it to pop

20                       out of the joint.  (ECF No. 59-3, Ex. A, at 109: 12-24.)

21                 -    When From would lean out of the harness, Hawkins would put out his hand and

22                       push From back into the seat so that From was not leaning against the harness.

23                       (ECF No. 59-3, Ex. A, 131:24-132:11.)

24                 -    Hawkins believed it was unsafe for From to lean against the harness straps, and

25                       when he pushed From back up in his seat, he did not believe he was using any

26                       amount of force.  (ECF No. 59-3, Ex. A, at 131:10-19; 131:24-132:11; 159:5-15.)

27                  For legal support, Hawkins cites to multiple cases where courts have found a school

28      official's use of force reasonable under similar circumstances.  See Domingo v. Kowalski, 810

                                                                 19

F.3d 403, 414 (6th Cir. 2016) (finding a school official's squeezing students' faces and pushing students' heads down was not clearly "disproportionate to the need presented" because it was "minimal, and therefore not excessive", as under a "shocks the conscience" standard of the fourteenth amendment); Saylor v. Bd of Educ. of Harlan Cty., 118 F.3d 507, 511 (6th Cir. 1997) (finding force that left bruises and swelling on a student was not excessive in that instance); TW ex rel. Wilson v School Bd. Of Seminole County Fla., 610 F.3d 588 (11th Cir. 2010) (finding no excessive force where a special education teacher restrained the severely-autistic plaintiff, pulled the child's hands behind his back, and sat on the child, resulting in bruising and other emotional injuries, as these actions were "capable of being construed as an attempt to restore order, maintain discipline, or protect [the severely-autistic plaintiff] from self-injurious behavior"; and finding the teacher's use of profanity on a daily basis and constant teasing of the plaintiff, and threatening of the students if they told, irrelevant to the objective reasonableness of the Fourth Amendment inquiry); see also Gohl v Livonia Public Schools, 836 F.3d 672, 679 (6th Cir. 2016) (finding there was a question whether the force defendant utilized was excessive when she grabbed a child's head and pulled it back, but still granting defendants' motion for summary judgment on the fourteenth amendment due process claim under a "shocks the conscience" standard). "Even in a case where a teacher slapped a student with no pedagogical purpose whatsoever, the court held that the single slap was not unconstitutionally excessive, because it 'was neither severe in force nor administered repeatedly." Domingo, 810 F.3d at 414.

If the facts above were the universe of undisputed facts, Hawkins very well may have prevailed in his motion. However, in Preschooler II, the Ninth Circuit made a point of distinguishing between those factual circumstances where the school official acted unreasonably in slapping the severely-disabled child and those where there were "unspecified bruises, scratches, and shoeless walks." 479 F.3d at 1181. In noting the former set of circumstances were actionable under the Constitution while the latter were not, the court reminded the parties of the "need to look objectively at the specific circumstances of the school and child." Id. Here, as plaintiffs note, some of the above facts remain in dispute. In response to Hawkins's assertion that the harness allowed From to lean into the aisle of the bus, Wagnon stated the slack allowed From

1   to reach into the aisle but not fully lean out.[8]  (ECF No. 63-1 at ¶ 3.)  Wagnon noted that though

2   From had surgery in 2015 after suffering a shoulder injury, by 2016 his shoulder had healed and

3   would not pop out of socket.  (ECF No. 63-1 at ¶ 2.)  On the morning bus ride on September 28,

4   2016, From obtained a bruise on his upper right thigh, which he did not have when he boarded the

5   bus.  (ECF No. 64-2, Ex. C, at 101:10-21.)  Wagnon examined the bruise that evening and noted

6   it was six or seven inches in length and approximately four inches wide with "broken blood

7   vessels that began to emerge around the hot white center."  (Id. at 103:6-23.)

8          Critical to plaintiffs' position is the deposition testimony of Sarah Brunkhorst, a board-

9   certified behavioral analyst and behavior specialist employed by Placer County Department of

10  Education who participated in From's IEP team meetings in October 2016.  (ECF No. 64-2, Ex.

11  D, at 4:25, 10:13-14; 15:4; 36:8-14.)  As part of this litigation, Brunkhorst reviewed six days of

12  bus recordings surrounding the September 28, 2016 event and issued a non-retained expert

13  opinion.  (ECF No. 64-2, Ex. D, at 4:25-5:1; 6:14-19; 38:15-17.)  Concerning that opinion,

14  Brunkhorst stated at her deposition that, after viewing the recordings, she concluded there were

15  no safety reasons for Hawkins to push From back into his seat.  (Id. at 56:15-19; 57:13-15; 58:6-

16  15; 80:6-21.)  Brunkhorst also opined that on another occasion, when From pinched Hawkins as

17  Hawkins passed by in the aisle, Hawkins failed to implement reactive strategies that would have

18  been employed by trained staff.  (ECF No. 64-2, Ex. D, at 72:19-73:5.)  Related to the latter

19  observation, there is other evidence in the record that Hawkins was not adequately trained to

20  handle his assigned duties.  (See ECF No. 59-3, Ex. A, at 77:18-24 (wherein Hawkins admitted

21  never having seen the school's "Transporting Passengers with Special Needs" document); Id. at

22  79:12-23 (wherein Hawkins failed to recall being trained on concepts in the training manual); Id.

23  at 80:2-21 (wherein Hawkins noted he was trained "in a general matter" on certain aspects of

24  working with children with special needs).)

25  ///

26

27  ───────────────────

    [8]  This fact would have been within Wagnon's personal knowledge even without a review of the
28  video, as Wagnon stated there were many days where she would walk From to the bus stop
    herself and was aware of the harness's operation.  (See depo. Wagnon at 14:7-8; 70:2-71:2)

Taking the facts in a light most favorable to plaintiffs, it is clear that certain portions of the record—including the core portion of plaintiff From's allegation that Hawkins's push on September 28, 2016 was objectively unreasonable—are genuinely in dispute.  This precludes a finding for Hawkins on his summary judgment assertions.  Pearson, 555 U.S. at 231; Serrano, 345 F.3d at 1077 ("If a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial."); see also Beecham v. Roseville City Sch. Dist., 2018 WL 1941670, at *6 (E.D. Cal. Apr. 25, 2018) ("A district court's decision to take the excessive force question away from the jury [can] conflict[ ] with circuit law.") (quotations omitted).  Hawkins's Bane Act arguments here fail alongside his Fourth Amendment claims.  See Garlick v. Cty. of Kern, 167 F. Supp. 3d 1117 (E.D. Cal. 2016).

Further, qualified immunity is not appropriate here, as a reasonable bus driver in Hawkins's position would have been on notice that his actions were Constitutionally impermissible.  As noted by plaintiffs, both Preschooler II, 479 F.3d 1175, and Doe ex rel. Doe, are sufficiently analogous on their facts to notify Hawkins that where a student "posed no danger to anyone" and was not "disruptive in the classroom," that student has a right to be "free of excessive physical punishment or restraint."  Doe ex rel. Doe v. Hawaii Dept. of Educ., 334 F.3d 906, 909-10 (9th Cir. 2003); Shafer, 868 F.3d at 1117 (noting that clearly established means the law must exist "in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law").  In Preschooler II, the Ninth Circuit found a special education teacher's slapping, forced participation in self-beating, and slamming of a student with severe disabilities to be excessive in light of the fact that the student posed no danger or disruption.  479 F.3d at 1180.  Here, although Hawkins's actions do not appear to be as sustained in duration as those in Preschooler II, the focus is on each particular instance.  C.B. v. Sonora Sch. Dist., 2011 WL 532404, at *8 (E.D. Cal. Feb. 11, 2011) ("Even minor uses of force may be unreasonable where the circumstances do not warrant the use of any force.").  Doe informs as much, as the Ninth Circuit found a constitutional violation for a single instance of teacher discipline where the student posed no danger.  Doe, 334 F.3d at 909-910; see also, e.g., I.V. v. Vacaville Unified School District, 2020 WL 820169 (E.D.

Cal. Feb. 19, 2020) (denying qualified immunity and relying on <u>Preschooler II</u> and <u>Doe</u>, where special education bus driver scolded and threatened child, pinned the child down in the seat, and ripped the child's backpack away because the child was exhibiting behaviors consistent with her severe disabilities).

### B.  Plaintiff Wagnon's Standing to Assert Claims

Defendants other argument requiring resolution in this motion is plaintiff Wagnon's standing to assert any claims against defendants.  Though seemingly a simple question, the text of plaintiffs' complaint and arguments made in the briefing have made it anything but.  So that the parties are clear what of plaintiff Wagnon's claims remain after this order, the court returns to the text of the complaint and certain arguments made in these proceedings.

In plaintiffs' complaint, they identify Wagnon as bringing the action "on her own behalf and as the legally appointed conservator for her adult son," plaintiff From.  (ECF No. 1 at ¶ 1.) The complaint's factual allegations center on From's experiences as a student in the Rocklin school district, and to the extent Wagnon is mentioned, it is in her role as From's parent (i.e. as From's conservator and witness to district employees' actions).  (See <u>id.</u> at ¶¶ 11, 13-21, 23-24.) The prayer for relief requests, among other things, "compensatory damages to Plaintiffs for injury, emotional distress, pain and suffering, transportation costs, lost wages, and for medical expenses, past and future[.]"  (<u>Id.</u> at 14.)  The complaint also has headers for each claim, and only lists Wagnon as asserting claims for negligence and for Bane Act violations against Hawkins, although <u>each claim</u> begins by incorporating the prior paragraphs.  (<u>Id.</u> at 7-13.)

Defendants seek summary judgment on "each and every claim herein [brought by Wagnon] against all defendants."  (ECF No. 59.)  Plaintiffs opposition focused on Wagnon's right to bring disability discrimination claims under the ADA and § 504.  (ECF No. 64.)  Defendants' reply focused on Wagnon's lack of standing to bring a Bane Act claim.  (ECF No. 65.)  The court ordered supplemental briefing, being unclear as to the scope of the parties' arguments (because the complaint only appeared to assert claims from Wagnon for negligence and Bane Act liability, as noted by the headers).  (ECF No. 66.)  In response, plaintiff argued the complaint intends to assert ADA and § 504 claims by Wagnon "in that she is asserting and enforcing the rights of her

1    son and incurred expenses for his benefit," and this should be clear because the ADA and § 504

2    claims incorporate by reference all preceding paragraphs.  (ECF No. 75 at 2.)  Defendants'

3    response was to fall back on its initial position:  that Wagnon has no standing to bring any claim

4    except those she can enforce on From's behalf.  (Id. at 4.)

5         The problem with plaintiffs' "incorporate by reference" argument is that if the court were

6    to read the complaint in this way, it would bring every claim by Wagnon on her own behalf.  This

7    highlights the problem of shotgun pleadings.  Destfino v. Kennedy, 2008 WL 4810770, at *3

8    (E.D. Cal. Nov. 3, 2008) (stating that the practice of "incorporat[ing] each preceding paragraph,

9    regardless of relevancy [has] been harshly criticized as a form of 'shotgun pleading' that violates

10   Rule 8's requirement of a 'short and plain statement' and interferes with the court's ability to

11   administer justice").  It also is likely why defendants resorted to making such vague arguments as

12   they do (challenging Wagnon's standing on "each and every claim" she asserts).

13        On the other hand, the time for a Rule 12(e) motion has long since passed.  Plaintiffs are

14   correct that the complaint identifies Wagnon as bringing the action "on her own behalf and as the

15   legally appointed conservator for her adult son," plaintiff From.  (ECF No 1.)  The topic of

16   Wagnon's lost wages and emotional distress has been discussed in this litigation.  (See, e.g., ECF

17   No. 65-2 at ¶ 20 (plaintiffs' disputed fact that Wagnon incurred additional expenses in

18   transporting From to school after the incident with Hawkins).)  Defendants' briefing also appears

19   to concede the fact that Wagnon seeks to assert these damages pursuant to claims in the

20   complaint, even as they dispute the clarity of the complaint itself or Wagnon's standing to bring

21   such claims.  (See ECF No. 65.)  Finally, it is not lost on the court that throughout this summary

22   judgment proceeding, defendants have made specific arguments challenging Wagnon's standing

23   on the § 1983, Bane Act, ADA, and § 504 claims, indicating defendants have at least presumed

24   Wagnon intends to participate in these claims in some way.  (See id.)  These facts weigh in favor

25   of not latching Wagnon's claims solely to those where her name appears in the header of a claim.

26   Given that the parties' ultimate goal is (or should be) to understand the scope of the claims that

27   will be proceed past this motion, the court resolves the matter as if plaintiff Wagnon herself

28   intended to assert each claim against defendants.

Regarding the Fourth Amendment claim against defendant Hawkins, plaintiff has no standing to bring such a claim, as Hawkins's alleged use of force was on plaintiff From only. See, e.g., Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001) (holding that a mother had no standing to claim a violation of her child's Fourth Amendment rights, as those rights "are personal and may not be asserted vicariously). Regarding any Bane Act claim Wagnon might have brought, the text of that statute does allow for it to attach to an ADA or § 504 claims. See, e.g., K.T. v. Pittsburg Unified Sch. Dist., 219 F. Supp. 3d 970, 982 (N.D. Cal. 2016) (noting Bane Act claims can be attached to both Fourth Amendment excessive force claims and those under the ADA and Rehabilitation Act, given that the Bane Act authorizes a cause of action for alleged violations of "rights secured by the Constitution or laws of the United States . . . ."). However, prior to the parties' consent to magistrate judge jurisdiction, the assigned district judge dismissed the Bane Act claim against Rocklin USD and Placer County. (ECF No. 22.) Thus, the only claim that remains for the Bane Act to attach to is the Fourth Amendment claim, and any attempt by Wagnon to assert this relief fails for the same reason as does the Fourth Amendment claim. Garlick, 167 F. Supp. 3d 1117

For the ADA and § 504 claims, Wagnon has no standing to assert her own disability discrimination claim on the facts of this case. This is true because she herself is not a person with a disability who experienced discrimination, nor is she a person who was unable to fully and equally access the district's services because of her association with From. Cf. Cortez v. City of Porterville, 5 F. Supp. 3d 1160, 1165 (E.D. Cal. 2014) (noting the availability of associational discrimination claims under Title II of the ADA and § 504, and finding grandfather could bring his own associational discrimination claims because both he and his granddaughter (the person with the disability) were prevented from accessing a sporting complex). Wagnon is not asserting she was prevented from riding the bus to school each day as part of her own IEP, but is merely attempting to assert those claims on behalf of her disabled son. As to Wagnon's standing to bring claims under the ADA and § 504 by "asserting and enforcing the rights of her son and incurring expenses for his benefit," the Ninth Circuit has made clear this is allowed. Blanchard v. Morton School Dist., 509 F.3d 934, 938 (9th Cir. 2007).

25

As to the parties arguments concerning the propriety of Wagnon's prayer for lost wages or her own emotional distress damages, the court finds these contentions unfit for resolution at this stage of the proceedings.  The prayer for relief—and the type of damages sought therein—is not part of either parties' actual claims or defenses which, of course, is the scope of Rule 56.  See Wright & Miller, Federal Practice and Procedure § 1255 (3d ed. 2004) ("[T]he demand for judgment is not considered part of [a] claim[, and] the selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type.")  Thus, while the issue undoubtedly will need to be resolved before trial (possibly in a fully-briefed motion in limine), it is not appropriate for resolution in these summary judgment proceedings. [9]

## **ORDER**

Accordingly, it is hereby ORDERED that:

1.  Defendants' motion for summary judgment (ECF No. 59) is GRANTED IN PART and DENIED IN PART;

2.  Plaintiff Wagnon's personal claims of discrimination under the Americans with Disabilities Act and Rehabilitation Act fail for a lack of standing, but she may assert these claims on behalf of plaintiff From in her role as From's conservator;

3.  Defendants' remaining contentions in this summary judgment proceeding are denied; and;

4.  Plaintiff's counsel is sanctioned $500 under Rule 11 and the court's inherent powers. Counsel shall pay this to the Clerk of the Court within 30 days, and shall not pass along this sanction to her clients.

Dated:  July 5, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[9] Previously, the court noted that regardless of the outcome of this motion, plaintiffs' claim for negligence and battery remain unchallenged and will require resolution at trial.  (ECF No. 66.) This order does nothing to change that finding.  Further, given that defendants' "administrative remedies" argument was foreclosed by a recent Supreme Court decision, these claims are also ripe for trial.  (ECF No. 74.)