1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ALICIA WAGNON, et al.,                          Case No. 2:17-cv-01666 CSK

12                       Plaintiffs,

13           v.                                        ORDER GRANTING IN PART AND
                                                       DENYING IN PART PLAINTIFFS'
14    ROCKLIN UNIFIED SCHOOL                           AMENDED MOTION FOR ATTORNEYS'
      DISTRICT, et al.,                                FEES
15
                                                       (ECF No. 150)
16                     Defendants.

17           Pending before the Court is Plaintiffs Alicia Wagnon and Sullivan R. From's

18    amended motion for attorney fees.[1] (ECF No. 150.) Defendants Rocklin Unified School

19    District ("RUSD"), Placer County Office of Education ("PCOE") and David Hawkins filed

20    an opposition (ECF No. 152), and Plaintiffs filed a reply (ECF No. 153). A hearing was

21    held on March 18, 2025, with attorney Allison Hyatt appearing on behalf of Plaintiffs and

22    attorney Carol Wieckowski appearing on behalf of Defendants. (ECF No. 156.) Because

23    Plaintiffs' amended motion did not include sufficient information for the Court's analysis,

24    supplemental briefing was ordered. (ECF No. 156.) The matter was submitted on March

25    31, 2025 after Plaintiffs submitted their supplemental brief and Defendants were

26

27    _____

      [1]  This case proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) for all
28    purposes, including the entry of judgment, pursuant to the consent of all parties. (ECF
      Nos. 49, 51, 52, 61.)

provided with the opportunity to respond. (ECF Nos. 157, 158.) For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' amended motion for attorney fees.

## I.    BACKGROUND

On August 11, 2017, Plaintiffs filed this action against Defendants alleging various federal and state law claims. Compl. (ECF No. 1). This action proceeded to trial on the following remaining claims: (1) Sullivan's[2] Section 1983 Fourth Amendment claim against Hawkins in his personal capacity; (2) Sullivan and Wagnon's Title II of the Americans with Disabilities Act ("ADA") claim against the RUSD and PCOE; (3) Sullivan and Wagnon's Rehabilitation Act § 504 claim against the RUSD and PCOE; (4) Sullivan's battery claim against Hawkins in his personal capacity; (5) Sullivan's negligence claim against Hawkins in his personal capacity; (6) Wagnon's negligence claim against Hawkins in his personal capacity; and (7) Sullivan's Bane Act (Cal. Civ. Code § 52.1) excessive force claim against Hawkins in his personal capacity. *See* Compl.; 3/30/2021 Order on Second Motion to Dismiss (ECF No. 22); 3/6/2023 Joint Statement (ECF No. 67); 7/5/2023 Summary Judgment Order (ECF No. 76); 9/24/2024 Joint Pretrial Statement (ECF No. 84); 10/31/2024 Amended Final Pretrial Order (ECF No. 111).

Trial began on November 4, 2024, and the case went to the jury on November 12, 2024 for deliberation. On November 13, 2024, the jury returned a verdict in favor of Plaintiffs on their failure to accommodate claims under the ADA and the Rehabilitation Act § 504, and in favor of Defendant Hawkins on all claims against him. Jury Verdict (ECF No. 139). The jury awarded Sullivan $9,000 in past non-economic damages and awarded Wagnon $17,000 in past economic loss, for a total of $26,000 in damages. *Id*. at 7. Judgment was entered pursuant to the jury verdict on November 15, 2024. (ECF No. 140.) On November 27, 2024, the parties filed their bills of costs (ECF No. 141,

---

[2]   Plaintiff Wagnon, Sullivan From's mother, requested that the Court and parties refer to Sullivan From as "Sullivan" before trial and at trial.

1   142) and objections to the bill of costs on December 4, 2024 (ECF Nos. 143, 144). On

2   January 8, 2025, the Court denied the parties' bill of costs and ordered each side to

3   bear its own costs. 1/8/2025 Order Re: Bill of Costs (ECF No. 151).

4        Plaintiffs now move for attorney's fees, including litigation expenses and costs

5   pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794a. Pls. Am. Mot. at 4 (ECF No. 150-

6   1).[3] Plaintiffs seeks an award of $802,874.50 in attorneys' fees and $13,096.32 "in

7   additional litigation costs not included in Plaintiff's Bill of Costs." *Id*. at 17.

8   **II.    LEGAL STANDARDS**

9        Pursuant to the ADA, "the court [] in its discretion, may allow the prevailing party,

10  other than the United States, a reasonable attorney's fee, including litigation expenses,

11  and costs[.]" 42 U.S.C. § 12205; *Barrios v. California Interscholastic Fed'n*, 277 F.3d

12  1128, 1134 (9th Cir. 2002) ("a prevailing party [under the ADA] 'should ordinarily

13  recover an attorney's fee unless special circumstances would render such an award

14  unjust.'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).

15       The Rehabilitation Act § 504 also provides that "the court, in its discretion, may

16  allow the prevailing party, other than the United States, a reasonable attorney's fee as

17  part of the costs." 29 U.S.C. § 794a(b); *see also Jacobson v. Delta Airlines, Inc*., 742

18  F.2d 1202, 1208 (9th Cir. 1984) (explaining the Rehabilitation Act "expressly authorizes

19  courts to award the prevailing party, other than the United States, in any action or

20  proceeding under the Rehabilitation Act a reasonable attorney's fee as part of the

21  costs").

22  **III.   DISCUSSION**

23       Plaintiffs argue as prevailing parties to their ADA and Rehabilitation Act § 504

24  claims, they are entitled to their reasonable attorneys' fees, including litigation expenses

25  and costs pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794a. Pls. Am. Mot. at 18.

26  Defendants oppose the motion arguing Plaintiffs should not be awarded fees and costs

27  _____

28  [3]  The Court granted the parties' stipulation to extend Plaintiffs' deadline to file its
     motion for attorney's fees. (ECF No. 148.)

1   because they are not the prevailing party due to their limited success on their claims.

2   Defs. Oppn. at 2-4. Alternatively, Defendants argue that Plaintiffs' award should be

3   substantially reduced based on Plaintiffs' limited success in prevailing on only two of

4   their seven claims; the fees are excessive and unreasonable; and the rejected Rule 68

5   offers severely reduce the fees incurred. Defs. Oppn. at 2-8. The Court addresses each

6   argument below.

7       **A.    Prevailing Party**

8       A "prevailing party" for purposes of entitlement to attorney fees under a fee-

9   shifting statute is "one who has been awarded some relief by the court." *Buckhannon*

10  *Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res*., 532 U.S. 598, 598

11  (2001). "[A] plaintiff 'prevails' when actual relief on the merits of [the] claim materially

12  alters the legal relationship between the parties by modifying the defendant's behavior

13  in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12

14  (1992). In such situations, "the legal relationship is altered because the plaintiff can

15  force the defendant to do something [it] otherwise would not have to do." *Fischer v.*

16  *SJB-P.D. Inc*., 214 F.3d 1115, 1118 (9th Cir. 2000). Enforceable judgments on the

17  merits, even if the award of damages is nominal, "create the material alteration of the

18  legal relationship of the parties necessary to permit an award of attorney's fees."

19  *Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 604 (internal quotation marks and

20  citation omitted).

21      Here, Plaintiffs are the "prevailing party" for purposes of the ADA and the

22  Rehabilitation Act § 504 claims where the jury found for Plaintiffs as to their failure to

23  accommodate claims, and awarded $26,000 total in damages. Jury Verdict at 7. The

24  fact that the jury awarded a small amount of damages, significantly less than what

25  Plaintiffs sought, does not change the analysis as even a nominal damages award can

26  result in finding a party to be the prevailing party. *See Buckhannon Bd. & Care Home,*

27  *Inc.*, 532 U.S. at 604. In addition, judgment was entered on November 15, 2025. (ECF

28  No. 140.) Because Plaintiffs received an enforceable judgment on the merits creating a

1  "material alteration of the legal relationship of the parties," Plaintiffs are the "prevailing

2  party." *Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 604.

3      **B.    Fee Award**

4      Though the Court concludes that Plaintiffs are the prevailing party for the

5  purposes of their ADA and Rehabilitation Act claims, Plaintiffs should not be awarded

6  their full fees requested because the requested fees are not reasonable. *See* 42 U.S.C.

7  § 12205 (court's discretion to award <u>reasonable</u> attorney's fees to prevailing party in

8  ADA); 29 U.S.C. § 794a(b) (same for Rehabilitation Act). The Ninth Circuit affords

9  district courts broad discretion in determining the reasonableness of fees. *Gates v.*

10  *Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). While the amount of a fee award is

11  discretionary, the district court must "provide a concise but clear explanation of its

12  reasons for the fee award." *Carter v. Caleb Brett LLC*, 757 F.3d 866, 868 (9th Cir.

13  2014).

14      The Court first analyzes reasonable attorney's fees through the lodestar method,

15  and then considers the degree of success obtained. *See Farrar v. Hobby*, 506 U.S. 103,

16  114 (1992) (degree of success obtained is the most critical factor in determining

17  reasonableness of fees); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir.

18  2013) (lodestar method). Under the lodestar method, the number of hours reasonably

19  expended is multiplied by a reasonable hourly rate. *Gonzalez*, 729 F.3d at 1202. The

20  product of this computation, the "lodestar" amount, yields a presumptively reasonable

21  fee. *Gonzalez*, 729 F.3d at 1202; *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978

22  (9th Cir. 2008). "[T]rial courts need not, and indeed should not, become green-

23  eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough

24  justice, not to achieve auditing perfection. So trial courts may take into account their

25  overall sense of a suit, and may use estimates in calculating and allocating an

26  attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

27      "The party seeking fees bears the burden of documenting the hours expended in

28  the litigation and must submit evidence supporting those hours[.]" *Welch v. Metro. Life*

*Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007) (citing *Hensley*, 461 U.S. at 433). "[T]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Hiken,* 836 F.3d at 1045 (quoting *Gates*, 987 F.2d at 1397-98). Hours expended "may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987).

### 1.    Plaintiffs' Fee Award Request

Plaintiffs seek to recover fees for nine individuals:  three partners with hourly rates of $600, two associate attorneys with hourly rates of $400 and $475, three paralegals with a $295 hourly rate, and one paralegal with a $175 hourly rate. Pls. Am. Mot. at 8-15. Plaintiffs' counsel was retained on a contingency fee basis, so the hourly rates and hours presented in Plaintiffs' fee request were not billed or actually paid by Plaintiffs. *See* Pls. Am. Mot. at 8. Plaintiffs' motion and reply failed to provide sufficient information for the Court's analysis where Plaintiffs attached 36 pages of billing records without any summary by individual or timeframe. *See* Allison Hyatt Decl., Exhs. B & C (ECF No. 150-4 & 150-5). As a result, at the hearing, the Court ordered Plaintiffs to file a supplemental brief with additional information regarding the total hours requested for each individual and the total amount requested for each individual, including by specific timeframes. (*See* ECF No. 156.) Plaintiffs submitted their supplemental brief, and Defendants were provided with the opportunity to respond, and submitted a statement of no-response. (ECF Nos. 157, 158.)

### a)    Partner Allison Hyatt

Plaintiffs seek to recover fees for 990.9 hours for lead Plaintiffs' counsel, Ms. Hyatt, a partner at a $600 hourly rate, for a total of $594,540 in fees. Pls. Supp. Br. at 2 (ECF No. 157).  Ms. Hyatt was admitted to practice in 2001, and has 16 years of

experience litigating ADA and Rehabilitation Act cases. ECF No. 150-1 at 9; Hyatt Decl. ¶ 7.

### b)    Brandon McKelvey

Plaintiffs seek to recover fees for 16.5 hours for partner Brandon McKelvey at a $600 hourly rate, for a total of $9,900 in fees. Pls. Supp. Br. at 2. Mr. McKelvey was admitted to practice in 2001, is a co-owner/co-founder of Medina McKelvey, and has significant mediation experience. ECF No. 150-1 at 10-11.

### c)    Alexander Medina

Plaintiffs seek to recover fees for 3.9 hours for partner Alexander Medina at a $600 hourly rate, for a total of $2,340 in fees. Pls. Supp. Br. at 2. Mr. Medina was admitted to practice in 2002, is a co-owner/co-founder of Medina McKelvey, and served as a "strategic partner" on the case. ECF No. 150-1 at 12.

### d)    Kyle Owen

Plaintiffs seek to recover fees for 153.6 hours for associate Kyle Owen at a $475 hourly rate, for a total of $72,960 in fees. Pls. Supp. Br. at 2. Mr. Owen was admitted to practice in 2019 and was a federal district court law clerk for two years before joining the law firm. ECF No. 150-1 at 12-13.

### e)    Douglas Leach

Plaintiffs seek to recover fees for 16.3 hours for associate Douglas Leach at a $400 hourly rate, for a total of $6,520 in fees. Pls. Supp. Br. at 2. Mr. Leach was admitted to practice in 2019. ECF No. 150-1 at 13.

### f)    Jenelle Joyce

Plaintiffs seek to recover fees for 339.4 hours for paralegal Janelle Joyce at a $295 hourly rate, for a total of $100,123 in fees. Pls. Supp. Br. at 2.

### g)    Lauren Adell

Plaintiffs seek to recover fees for 34.9 hours for paralegal Lauren Adell at a $175 hourly rate, for a total of $6,107.50 in fees. Pls. Supp. Br. at 3.

/ / /

1

*h)    Andrew Sayre*

2    Plaintiffs seek to recover fees for 30 hours for paralegal Andrew Sayre at a $295

3    hourly rate, for a total of $8,850 in fees. Pls. Supp. Br. at 3.

4

*i)    Samantha Shapiro*

5    Plaintiffs seek to recover fees for 5.2 hours for paralegal Samantha Shapiro at a

6    $295 hourly rate, for a total of $1,534 in fees. Pls. Supp. Br. at 2.

7

2.    <u>Reasonable Hourly Rates</u>

8    Plaintiffs argue the rates requested for their attorneys and staff are reasonable

9    and are within the prevailing rates in both the Central District of California and the

10    Eastern District of California. Pls. Am. Mot. at 8, 14-15. Defendants oppose Plaintiffs'

11    hourly rates, asserting the rates sought are primarily based on cases from the Central

12    District of California and the only Eastern District of California case cited by Plaintiffs

13    (*Z.F. v. Ripon Unified Sch. Dist.*) provides for reasonable attorney fees ranging from

14    $350 to $550 per hour for experienced attorneys with over 15 years of experience in the

15    civil rights field. Defs. Oppn. at 6. Defendants further argue Plaintiffs' counsel do not

16    have over 15 years of experience working in the special education field and are

17    therefore not entitled to such high rates. *Id*. at 6.

18    Reasonable hourly rates are determined by the "prevailing market rates in the

19    relevant community." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). "[T]he

20    established standard when determining a reasonable hourly rate is the 'rate prevailing

21    in the community for similar work performed by attorneys of comparable skill,

22    experience, and reputation.'" *Camacho,* 523 F.3d at 979 (quoting *Barjon v. Dalton*, 132

23    F.3d 496, 502 (9th Cir. 1997)). The fee applicant bears the burden of showing that the

24    requested rate is "in line with those prevailing in the community." *Hiken v. Dep't of Def*.,

25    836 F.3d 1037, 1045 (9th Cir. 2016) (quoting *Camacho*, 523 F.3d at 980). Generally,

26    "the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d

27    at 979 (quoting *Barjon*, 132 F.3d at 500). Here, the relevant community is Sacramento,

28    California, which is where this district court sits. *See Camacho*, 523 F.3d at 979.

8

Plaintiffs seek to recover fees for nine individuals:  three partners with hourly rates of $600, two associate attorneys with hourly rates of $400 and $475, three paralegals with a $295 hourly rate, and one paralegal with a $175 hourly rate. Pls. Am. Mot. at 8-15; Pls. Supp. Br. These rates, however, are significantly higher than the rates Plaintiffs presented in their own motion. In November 2023, lead counsel Hyatt was awarded a $525 hourly rate and paralegal Joyce was awarded a $200-210 hourly rate by the district court in the Central District of California, reflecting rates for the Los Angeles region as the relevant community. *See* Pls. Am. Mot. at 9 & Hyatt Decl. Exh. A at 8-10 (attaching *Lawrence v. Palos Verdes Peninsula Unified School District*, No. 8:23-cv-00524-JWH-ADS, 11/1/2023 Order, ECF No. 26 (C.D. Cal.)). Plaintiffs' requested rates are also significantly higher than the prevailing rates Plaintiffs presented for this district court. Pls. Am. Mot. at 14 (citing *Z.F. v. Ripon Unified School District,* 2017 WL 1064679, at *3 (E.D. Cal. Mar. 21, 2017) (Sacramento Division) (finding prevailing hourly rates in the Eastern District of California to be $350-550 per hour for experienced attorneys with over 15 years of experience in civil rights and class action litigation)). The rates presented by Plaintiffs for this district are comparable to the rates awarded in other similar cases in this district. *See, e.g., Chapman v. Pier 1 Imports (U.S.), Inc*., 2017 WL 999253, at *3 (E.D. Cal. Mar. 15, 2017) (Sacramento Division) (awarding $300 hourly rate for principal attorney who was "undoubtedly experienced in disability access litigation," $200 hourly rate for associate, and $100 hourly rate for paralegals); *McCarty v. Humphrey*, 2016 WL 4899194, at *5 (E.D. Cal. Sept. 15, 2016) (Sacramento Division) (awarding $300 hourly rate for partner with over 25 years of experience and who specialized in ADA litigation for most of her career, handling approximately 1800 ADA cases and awarding $150 hourly rate for a junior associate).

In addition, Plaintiffs' counsel submitted a single hourly rate for each attorney and staff, though counsel seeks fees for work from 2017 to 2024. While this approach may be reasonable if those rates did not actually or substantially change over the

seven-year period from 2017-2024, Plaintiffs' own authority demonstrates that counsel's rates changed substantially and their requested rates are not reasonable. Here, Plaintiffs request a $600 hourly rate for lead counsel Hyatt for almost 1,000 hours of work completed from 2017 to 2024, and a $295 hourly rate for paralegal Joyce for work completed from 2019 to 2024. *See* Pls. Am. Mot.; Pls. Supp. Br. Yet, in 2023 in *Lawrence v. Palos Verdes Peninsula Unified School District*, Hyatt requested a $525 hourly rate and two different hourly rates for paralegal Joyce to account for rate changes (a $200 hourly rate for work in 2022, and a $210 hourly rate for work in 2023). *See* Hyatt Decl., Exh. A at 8-10. Plaintiffs fail to justify applying their proffered 2024 rates for work beginning in 2017 while Plaintiffs' lead counsel was at a different law firm, and applying rates that differ substantially from the rates counsel presented to a different district court in 2023 for the higher market rate of Los Angeles. *See* Pls. Am. Mot.; Pls. Reply; Pls. Supp. Br. Given that Plaintiffs' counsel recently submitted substantially lower rates for the same lead counsel and senior paralegal for work during the same time period, and even presented different annual rates over a two-year time period for the paralegal, Plaintiffs' requested hourly rates in this case are unreasonable. In addition, the majority of Plaintiffs' work was done before 2024, further making Plaintiffs' requested rates unreasonable. *See* Pls. Supp. Br.

Ultimately, Plaintiffs have not carried their burden in establishing that their requested rates are in line with those prevailing in the relevant community where this district court sits for similar services. Using Plaintiffs' own authority for reasonable hourly rates awarded by this district court for the relevant community (Sacramento), *see* Pls. Am. Mot. at 14 (citing *Z.F. v. Ripon Unified School District*), the Court awards a $450 hourly rate for the three partners, who have similar levels of experience; a $350 hourly rate for both associates, who have similar levels of experience; and a $75 hourly rate for the paralegals.[4] *See Z.F. v. Ripon Unified School District,* 2017 WL 1064679 at

_____

[4]  While Plaintiffs' fee request indicates a range of experience for the four paralegals, the request provides the same hourly rate for senior paralegals and paralegals, and

1    *3-4 (awarding a $450 hourly rate for partners, a $350 hourly rate for associates, and a

2    $75 hourly rate for paralegals, rejecting the requested $90 hourly rate for paralegals).

3    The Court further notes that this is also consistent with Plaintiffs' own cited authority,

4    which indicates higher market rates for the Central District of California, which is based

5    on the Los Angeles region. *See* Pls. Am. Mot. at 14 (citing higher hourly rates for the

6    Central District of California); *see also Camacho*, 523 F.3d at 979 ("the relevant

7    community is the forum in which the district court sits").

8                    3.    Hours Reasonably Expended

9            Having determined the reasonable hourly rates, the Court next turns to the

10    number of hours reasonably expended. The district court may reduce the hours

11    expended if the hours were not reasonably expended, the documentation is inadequate,

12    for overstaffing and duplicated work, excessive hours, or otherwise unnecessary hours.

13    *See Chalmers*, 796 F.2d at 1210.

14                    a)    *Abandoned Request*

15            Plaintiffs state in passing that they seek fees incurred in preparing a reply brief.

16    Pls. Am. Mot. at 17. Plaintiffs never, however, submitted any information or

17    documentation for any fees incurred in preparing their reply brief despite more than

18    ample time between when the reply was filed on January 24, 2025, the hearing was

19    held on March 18, 2025, and when the matter was finally submitted with all briefing

20    complete on March 31, 2025. *See* Docket. This request, therefore, is deemed

21    abandoned. Plaintiffs have also failed to meet their burden of documenting the hours

22    expended and supporting evidence in support of any hours spent on the reply. *See*

23    *Welch*, 480 F.3d at 945-46.

24    / / /

25    / / /

26    _____

27    only provides a different rate for one junior paralegal. *See* Pls. Supp. Br.; ECF Nos.
150-10, 150-11, 150-12, and 150-13. The Court declines to award different rates for the

28    paralegals where the descriptions of their work were somewhat similar. *See* Hyatt Decl.,
Exh. C.

1

2

          b)     *Overstaffing, Duplicative Work, Clerical Work and Other Conduct*

3       The Ninth Circuit has made clear that "the district court can impose a small

4 reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion

5 and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106,

6 1112 (9th Cir. 2008). The Court exercises its discretion to impose a 10% "haircut"

7 reduction, and though a more specific explanation is not required, the Court imposes

8 this reduction to address overstaffing, duplicative work, clerical work, and misconduct

9 and provides a more specific explanation. The Court also notes that though it could

10 have imposed a 10% haircut *in addition to* itemized reductions, it has included the

11 itemized reductions within this 10% haircut to result in a lower overall reduction of hours

12 for Plaintiffs.

13      <u>Overstaffing and duplicative work</u>. Plaintiffs seek to recover fees for nine

14 individuals:  three partners, two associate attorneys, and four paralegals. Pls. Am. Mot.

15 at 8-15. For the first two years this case was litigated—which included researching,

16 drafting, and filing the Complaint, opposing a motion to dismiss, retaining and working

17 with an expert, and serving and responding to discovery—only one attorney (lead

18 counsel Hyatt) was working on this case. Hyatt Decl., Exh. B (billing records from June

19 2017 - July 2019). After lead counsel changed law firms, the team grew substantially.

20 By contrast, the defense counsel team representing Defendants RUSD, PCOE, and Mr.

21 Hawkins consisted of one partner, one associate, and one paralegal. Mot. Hrg. When

22 the Court raised its concern at the hearing about Plaintiffs' overstaffing for a case of this

23 size, Plaintiffs' lead counsel was not able to identify other similar cases with this large

24 level of staffing and conceded that no examples were provided in Plaintiffs' briefing. *See*

25 *id*. Plaintiffs' billing records also demonstrate duplication of effort from this staffing. For

26 example, two partners prepared for and attended a settlement conference in 2023 and

27 a mediation in 2024. *See* Hyatt Decl., Exh. C at 20 (6.7 hours for partner Hyatt and 4.8

28

1  hours for partner McKelvey), 23 (14 hours for partner Hyatt and 9 hours for partner
2  McKelvey).

3      <u>Clerical work</u>. Plaintiffs also seek fees for "time spent reviewing the docket and
4  monitoring filing deadlines," which should be excluded. *See Lemus*, 426 F. App'x at 545
5  (affirming reduction of fees for "time spent reviewing the docket and monitoring filing
6  deadlines"); *see, e.g.*, Hyatt Decl., Exh. C (multiple entries from paralegal staff related
7  to reviewing the docket and monitoring deadlines).

8      <u>Other conduct</u>. Courts can also reduce attorney's fees awarded for issues related
9  to attorney conduct because awarding attorney's fees for misconduct is not reasonable
10 and would be unjust. *See Lemus v. Burnham Painting & Drywall Corp.*, 426 F. App'x
11 543, 545 (9th Cir. 2011) (affirming reduction of fees for plaintiffs' counsel's stalling
12 tactics). Here, Plaintiffs' hours should be reduced in connection with responding to
13 Defendants' motion for partial summary judgment where Plaintiffs' lead counsel was
14 monetarily sanctioned for "failure to cite to accurate portions of the record, coupled with
15 blatantly argumentative and wholly inaccurate descriptions of the actual testimony relied
16 upon," which was "found to be in bad faith as a reckless misleading of the facts." *See*
17 7/5/2023 Order on Defs' Mot. for Partial Summ. Judgt at 17 (ECF No. 76). The Court
18 finds Plaintiffs' counsel hours related to the summary judgment motion should be
19 partially reduced because not all hours were reasonably expended where Plaintiffs'
20 counsel's conduct unnecessarily required significantly more work by all parties and the
21 Court, expending limited judicial resources in a federal judicial district with one of the
22 higher caseloads per judge in the country. *See* 7/5/2023 Order on Defs' Mot. for Partial
23 Summ. Judgt at 16-17.[5] In addition, Plaintiffs' counsel should not recover its fees for
24 work for which counsel's conduct was found to be in bad faith and reckless. *See id*.

---

25 [5]   The Court further notes that this reduction is not a double counting. The $500
26 monetary sanction was issued directly against Plaintiffs' lead counsel by the previous
   assigned judge, not against Plaintiffs. Plaintiffs' request for attorney's fees as the
27 prevailing party is a request made by the party, Plaintiffs Wagnon and From. In addition,
   Plaintiffs' fee request for counsel's summary judgment work far exceeds the monetary
28 sanction, and the reduction noted here.

Accordingly, the Court concludes that Plaintiffs are not entitled to recover attorney's fees sought for the 32.4 hours expended by Plaintiffs' lead counsel Hyatt on summary judgment, which represents less than half of the total time requested for Plaintiffs' counsel work on summary judgment. *See* Hyatt Decl., Exh. C at 16-21 (the Court does not reduce hours for 21.3 hours expended by associate Owen and 15.5 hours expended by paralegal Joyce at summary judgment).

Plaintiffs' hours should also be reduced in connection with their Second Amended Exhibit list, and reviewing and responding to the Court's Final Pretrial Order. As described in the Court's Amended Final Pretrial Order, Plaintiffs filed objections to the Final Pretrial Order that included inaccurate statements regarding Plaintiffs' amendments to their exhibit list. *See* 10/31/2024 Am. Fin. Pretrial Order at 5-6 (ECF No. 111); Pls. Obj. Fin. Pretrial Order (ECF No. 109). At the Final Pretrial Conference, the Court noted its surprise that Plaintiffs' exhibit list did not include photographs, which Plaintiffs' lead counsel confirmed were missing from Plaintiffs' exhibit list. *See* Pls. Am. Exh. List (ECF No. 90). After the Final Pretrial Conference, Plaintiffs filed a Second Amended Exhibit List that added two new photograph exhibits. Pls. Second Am. Exh. List (ECF No. 92). While seeking to amend their exhibit list was appropriate, Plaintiffs inaccurately characterized these new exhibits in their objections to the Final Pretrial Order as amendments to address an unrelated issue regarding the lack of specificity in the description of Plaintiffs' exhibits. *See* Pls. Obj. Fin. Pretrial Order (ECF No. 109). As the Court previously explained in its Amended Final Pretrial Order, this was not accurate. 10/31/2024 Am. Fin. Pretrial Order at 5-6. As a result, the Court concludes that Plaintiffs are not entitled to recover attorney's fees requested for work on Plaintiffs' second amended exhibit list and Plaintiffs' objections to the Final Pretrial Order, which totals 1.3 hours for Hyatt and 3.4 hours for paralegal Joyce. *See* Hyatt Decl., Exh. C at 26-27.

c)      *Enlargement Concerns*

Defendants raise concerns that Plaintiffs have significantly enlarged their claim of

attorney's fees where Plaintiffs stated in writing that that their total attorney's fees and costs "to date" as of July 12, 2023 was $339,474.86, and as of July 19, 2023 was $339,837.36. *See* Carol Wieckowski Decl., ¶¶ 4-6, 8 (ECF No. 152-2), Exh. C (ECF No. 152-2 at 18) & Exh. D (ECF No. 152-2 at 20-21). The Court shares this concern, especially because Plaintiffs' explanation in both their written reply and at the hearing do not adequately explain how their fees and costs more than doubled to $802,874.50 in fees and $13,096.32 in costs, where fees incurred after late July 2023 were limited to additional mediation efforts and trial because all discovery and dispositive motion practice had already closed. Though Plaintiffs provided in writing what appeared to be exact fees and costs twice in July 2023, Plaintiffs' main argument is that these figures somehow did not include $158,160 in lead counsel Hyatt's fees for two years at her prior law firm (June 2017 - July 2019). *See* Pls. Reply at 5 (providing total fees from prior law firm), 8. Plaintiffs repeated this argument at the hearing. It is not credible that during intensive and multiple rounds of mediation efforts, which Plaintiffs argue on the one hand justify their high fee request, Plaintiffs somehow did not include two years of their lead counsel's fees totaling $158,160, which would have increased their total fees and costs demand to $497,997.36 as of July 19, 2023 and represents an almost 50% increase from the $339,837.36 fees and costs Plaintiffs represented they had incurred "to date."

　　　　While the Court shares Defendants' concern that Plaintiffs' post-trial fee calculation differs so significantly from their pre-trial fee calculation suggesting an improper enlargement of fees, there is no practical way to determine whether there was an actual improper enlargement of fees where counsel did not provide documentation of their fee estimate in July 2023 and where actual bills are not available given counsel's contingency arrangement. The Court therefore declines to reduce Plaintiffs' fee request based on the vastly different pre-trial fee estimates Plaintiffs provided in July 2023.

　　　　　　　4.　　Limited Success

　　　　The Supreme Court has made clear that "'the most critical factor' in determining

the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar*, 506

U.S. at 114 (quoting *Hensley,* 461 U.S. at 436; citing *Marek v. Chesny,* 473 U.S. 1, 11

(1985)). The Supreme Court has provided that if "a plaintiff has achieved only partial or

limited success, the product of hours reasonably expended on the litigation as a whole

times a reasonable hourly rate may be an excessive amount. This will be true even

where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.

Congress has not authorized an award of fees whenever it was reasonable for a plaintiff

to bring a lawsuit or whenever conscientious counsel tried the case with devotion and

skill. Again, the most critical factor is the degree of success obtained." *Hensley*, 461

U.S. at 436. To determine whether a reduction is appropriate for limited success, the

court first evaluates whether the successful claims are related to the unsuccessful

claims. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 901-02 (9th Cir.

1995). If the successful and unsuccessful claims are related, the court next "evaluates

the significance of the overall relief obtained by the plaintiff in relation to the hours

reasonably expended on the litigation. If the plaintiff obtained excellent results, full

compensation may be appropriate, but if only partial or limited success was obtained,

full compensation may be excessive." *Id*. (quoting *Thorne v. City of El Segundo*, 802

F.2d 1131, 1141 (9th Cir. 1986) (internal quotation marks and other citations omitted)).

The Supreme Court concluded that the district court has discretion in making its

determination and "may simply reduce the award to account for the limited success."

*Hensley*, 461 U.S. at 436-37.

Plaintiffs were successful on two of their seven claims. The jury found for

Plaintiffs on their failure to accommodate claims under the ADA and Rehabilitation Act.[6]

*See* Jury Verdict. The jury found for Defendant Hawkins on all five claims against him.

*See* Jury Verdict. The Court concludes that the successful ADA and Rehabilitation

claims are not related to the unsuccessful claims against Hawkins. The ADA and

---

[6]  Plaintiffs were not successful on the disability discrimination portion of their ADA and Rehabilitation Act claims. *See* Jury Verdict.

1  Rehabilitation Act claims against the school district (RUSD) and County Office of

2  Education (PCOE) have different legal standards that are unrelated to the claims

3  against Hawkins. While there are some minimal overlapping facts between the

4  unsuccessful and successful claims, the predominate factual bases for the claims are

5  also distinct. The claims against Hawkins all centered around Plaintiffs' allegations and

6  arguments that Hawkins abused Sullivan and used force against Sullivan with claims for

7  battery, excessive force, seizure, and negligence.[7] The ADA and Rehabilitation Act

8  failure to accommodate claims focused on other facts, such as having an aide on the

9  bus with Sullivan, whether the accommodations provided during school hours to

10  Sullivan in the classroom also applied during the bus rides to and from school, what

11  training was provided to bus drivers, etc. The claims against Hawkins could have been

12  brought in a separate lawsuit from the ADA and Rehabilitation Act claims, which is

13  further supported by the fact that Hawkins had no decision making authority over what

14  accommodations were or were not provided to Sullivan, no supervisory authority, and

15  was Sullivan's bus driver for a limited time period. In addition, Plaintiffs could have

16  elected to bring their ADA and Rehabilitation Act claims for a time period in which

17  Hawkins was not Sullivan's bus driver.

18      Even if the successful and unsuccessful claims were found to be related and the

19  Court proceeded to the second step of analysis, Plaintiffs did not achieve excellent

20  results to warrant awarding all fees. *See Schwarz*, 73 F.3d at 901-02. Plaintiffs

21

22  [7]  Plaintiffs' litigation conduct related to their allegations against Defendant Hawkins, which continued through trial, are concerning. At trial after Plaintiffs rested, and outside

23  the presence of the jury, Plaintiffs' lead counsel Hyatt conceded that Plaintiffs had <u>no</u> evidence that Mr. Hawkins caused the bruise on Sullivan, which served as the start of

24  this whole case and the basis for Plaintiffs' allegations and arguments that Mr. Hawkins physically abused Sullivan—allegations and arguments that Plaintiffs made from the

25  beginning of the lawsuit in 2017 through the November 2024 trial. *See* Compl.; Jury Trial Day 5 Minutes at 4 (ECF No. 129). As the Court noted after Plaintiffs' concession,

26  it is concerning that Plaintiffs repeatedly made allegations of physical abuse by Mr. Hawkins in their Complaint, multiple court filings, and even in argument during trial in

27  Plaintiffs' opening statement for which they had no evidence, only speculation. The Court further notes that Plaintiff Wagnon testified at trial that she is an attorney.

28

1  achieved limited success where the significance of the overall relief Plaintiffs obtained

2  (a $26,000 verdict) is quite minimal in relation to the 1,590.7 hours expended and the

3  $802,875 in fees requested. *See* Jury Verdict; Pls. Am. Mot.; *see also Schwarz*, 73 F.3d

4  at 901-02. The jury awarded Sullivan only $9,000 in past non-economic loss and

5  Wagnon $17,000 in economic loss for expenses incurred, a further indication of the

6  jury's assessment of the gravity of and damages resulting from the failure to

7  accommodate. *See* Jury Verdict. Full compensation of Plaintiffs' requested 1,590.7

8  hours would be excessive given Plaintiffs' limited success.

9       The Court is not required to identify specific amounts or billing entries to reduce

10  Plaintiffs' fee award based on their limited success, and can instead identify a

11  percentage for reduction based on Plaintiffs' limited success. *See Fox*, 563 U.S. at 838

12  (in awarding attorney's fees, trial courts "should not, become green-eyeshade

13  accountants" or "achieve auditing perfection"); *Hensley*, 461 U.S. at 436-37. The Court

14  further notes that identifying specific amounts for reduction would unreasonably require

15  the Court to take on an accountant role and audit the hundreds of entries across 36

16  pages of billing records submitted (*see* Hyatt Decl., Exhs. B & C), which the Supreme

17  Court has made clear is not required. *See Fox*, 563 U.S. at 838. Defendants argue that

18  should the Court award Plaintiffs any fees, and if fees are awarded, Plaintiffs' fees

19  should be reduced by 50% based on their limited success. *See* Defs. Oppn. at 2-4, 7;

20  Gerald G. Knapton Decl., ¶ 109 (ECF No. 152-1).[8]

21       The Court declines to employ a straight mathematical deduction based on the

22  percentage of successful versus unsuccessful claims (i.e., reduction by 71.4% for

23  success on two of seven claims), as that does not appropriately recognize that the ADA

24  and Rehabilitation Act claims were a substantial part of the case. Reducing Plaintiffs'

25  _____

26  [8]  Though the Court's fees analysis and calculation differs from Defendants and their
    expert, Defendants met their burden on rebuttal to submit evidence challenging the

27  accuracy and reasonableness of Plaintiffs' fee request. *See Hiken,* 836 F.3d at 1045.
    As a result, the Court need not reach Plaintiffs' other arguments regarding Defendants'

28  expert. *See* Pls. Reply at 5-7.

fee request by 50% as argued by Defendants would be justified given Plaintiffs' success on only two of their seven claims at trial; the jury's minimal damages award, reflecting the jury's determination that it did not credit Plaintiffs' damages case, including the testimony of Plaintiffs' damages expert (Dr. Nora Baladerian) and Plaintiff Wagnon; and Plaintiffs' rejection of two Rule 68 offers, including the second offer for $405,000, which would have resulted in a substantially higher recovery for Plaintiffs than the $26,000 jury verdict. Though a 50% reduction would be justified, the Court exercises its discretion and reduces Plaintiffs' total fee request by 40% as this appropriately reflects Plaintiffs' limited success, while also recognizing that Plaintiffs did prevail on their ADA and Rehabilitation Act claims, which were a substantial part of the case. *See Martinez v. Longs Drug Stores, Inc.*, 2005 WL 3287233, at *4 (E.D. Cal. Nov. 28, 2005) (reducing plaintiff's fee award by 2/3 where plaintiff was successful on 5 of his 21 ADA claims).

### C.    Rule 68 Offers

On May 22, 2023, Defendants sent Plaintiffs an "Offer of Settlement (Federal Rule of Civil Procedure 68)" for $150,000, which Plaintiffs did not accept. Decl. of Carol A. Wieckowski ¶ 2, Exh. A (ECF No. 152- 2). On February 5, 2024, Defendants sent Plaintiffs "Defendants' Joint Rule 68 Offer" for $405,000, which Plaintiffs also did not accept. Wieckowski Decl. ¶ 3, Exh. B. The jury awarded Plaintiffs a total of $26,000 on their ADA and Rehabilitation Act § 504 claims (Jury Verdict at 7), significantly less than either of Defendants' Rule 68 offers. Accordingly, Defendants argue Plaintiffs' fees post-Rule 68 offers should be "severely reduced." Def. Oppn. at 7-9. Plaintiffs argue Defendants' Rule 68 offers are deficient because they were offers of settlement and a stipulation of dismissal and therefore do not comply with Rule 68. Pls. Reply at 7-8.

Federal Rules of Civil Procedure 68 provides that "[a]t least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). The opposing party may then accept the offer if "within 14 days after being served," they serve "written notice accepting the offer." *Id*. To confirm the offer, either

party may file the "offer and notice of acceptance, plus proof of service. The clerk must then enter judgment." *Id*. Under Rule 68, a plaintiff must pay the costs incurred after an unaccepted Rule 68 offer if the offer is more favorable than the judgment plaintiff ultimately obtains. Fed. R. Civ. P. 68(d). "To preserve and to promote the purposes of Rule 68," the term "judgment" has been held to include orders finally terminating litigation as a result of settlement, such as a dismissal with prejudice. *Lang v. Gates*, 36 F.3d 73, 76, 77 (9th Cir. 1994); *see also Walker v. Rash Curtis & Assoc*., 2010 WL 4157128, at *2 (E.D. Cal. Oct. 19, 2010) ("By all accounts, at the federal level, there is no material distinction between an offer of 'judgment' and an offer of 'settlement' under Rule 68.") (citation omitted). Although Defendants' Rule 68 offers are not deficient as Plaintiffs argue, the Court next addresses whether the underlying statutes impact the applicability of Rule 68 in this action.

"[A]bsent congressional expressions to the contrary, where the underlying statute defines 'costs' to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68." *Marek v. Chesny*, 473 U.S. 1, 9 (1985). As noted above, the ADA provides that "the court [] in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs[.]" 42 U.S.C. § 12205. Because this provision does not define costs to include attorney fees, the "Rule 68's cost-shifting device does not apply to fees under the ADA." *Wyatt v. Ralphs Grocery Co.*, 65 F. App'x 589, 591 (9th Cir. 2003); *see also Deanda v. Sav. Inv., Inc.*, 267 F. App'x 675, 677 (9th Cir. 2008) (holding Rule 68 offer did not defeat plaintiff's eligibility for fees because the ADA does not define "costs" to include attorney fees).

The Rehabilitation Act § 504, on the other hand, provides that "the court, in its discretion, may allow the prevailing party, other than the United States, *a reasonable attorney's fee as part of the costs*." 29 U.S.C. § 794a(b) (emphasis added). Because the statute includes fees within its "costs," the second Rule 68 offer would bar Plaintiffs from seeking their attorney's fees incurred after declining the second Rule 68 offer because

1   the offer is more favorable than the judgment Plaintiffs ultimately obtained, including

2   fees awarded. However, because the ADA and the Rehabilitation Act § 504 claims are

3   interrelated such that it would be difficult if not impossible to separate fees for just the

4   Rehabilitation Act claim, the Court declines to reduce fees incurred after the unaccepted

5   Rule 68 offer was made.[9]

6       **D.    Litigation Costs**

7       Plaintiffs seek additional litigation costs not included in Plaintiffs' bill of costs. Pls.

8   Am. Mot. at 17; Pls. Reply at 8. Plaintiffs seek a total of $13,096.32 in costs, which

9   includes $9,771.84 in costs incurred while Ms. Hyatt was working at her prior law firm,

10  Freeman Mathis & Gary, LLP. Hyatt Decl., ¶ 22. Plaintiffs' costs incurred with Freeman

11  Mathis & Gary LLP include expert witness fees for Dr. Nora Baladerian ($3,500),

12  drafting and editing press release and updating media list ($3,075), and Dr.

13  Baladerian's review of records ($3,196.84). *See* Hyatt Decl. Exh. B at 6 (ECF No. 150-

14  4). It is unclear which costs were incurred with Medina McKelvey LLP that Plaintiffs

15  seek. *See* Hyatt Decl. Exh. C at 32 (ECF No. 150-5). Both the ADA and Rehabilitation

16  Act § 504 authorize a court, in its discretion, to award costs to prevailing parties in an

17  action. 42 U.S.C. § 12205 and 29 U.S.C. § 794a. Consistent with the Court's prior order

18  on the parties' bill of costs, the Court exercises its discretion and denies Plaintiffs their

19  additional requested costs and concludes Plaintiffs should bear their own costs. *See*

20  1/8/2025 Order Re: Bill of Costs. In addition, Plaintiffs seek significant costs for media

21  and publicity, which are improper bases for a fee award. *See Gates v. Gomez*, 60 F.3d

22  525, 535 (9th Cir.1995) (abuse of discretion to award fees for attending annual

23  conference and for media contact); *McKenzie Flyfishers v. McIntosh*, 158 F. Supp. 3d

24  1085, 1096-97 (D. Or. 2016) (award should not include media contact). Finally, the

25  Court notes that the jury's minimal non-economic damages award of $9,000 reflects

26  that the jury did not give much credit to Plaintiffs' damages case, including the

27  _____

28  [9]   The Court further notes that whenever Plaintiffs' billing records refer to work related
    to the Rehabilitation Act, the billing entry also refers to work on the ADA.

testimony of Plaintiffs' damages expert, Dr. Baladerian, for whom Plaintiffs seek $6,696.84 in costs.

### E.    Calculation Summary and Conclusion

In summary, the Court awards a $450 hourly rate for the three partners, who have similar levels of experience; a $350 hourly rate for both associates, who have similar levels of experience; and a $75 hourly rate for paralegals. Plaintiffs' fee request is reduced by 10% for overstaffing, duplicative work, clerical work, and misconduct. To appropriately reflect Plaintiffs' limited success at trial, Plaintiffs' fee request is reduced by 40%. Though Plaintiffs' overall recovery is less than the $405,000 Rule 68 offer that Plaintiffs rejected, the Court declines to reduce fees incurred after this Rule 68 offer was made. Finally, the Court denies Plaintiffs' additional requested costs.

A chart summarizing the above calculations is provided:

| Name | Position | Hours Request | Overstaff & Other Subtract 10% | Limited Success Subtract 40% | Total Hours Award | Hourly Rate Award | Fee Award (Hours x Hourly Rate) |
|---|---|---|---|---|---|---|---|
| Allison Hyatt | Partner | 990.9 | 99.09 | 396.36 | 495.45 | $450 | $222,952.50 |
| Brendon McKelvey | Partner | 16.5 | 1.65 | 6.6 | 8.25 | $450 | $3,712.50 |
| Alexander Medina | Partner | 3.9 | 0.39 | 1.56 | 1.95 | $450 | $877.50 |
| Kyle Owen | Associate | 153.6 | 15.36 | 61.44 | 76.8 | $350 | $26,880.00 |
| Douglas Leach | Associate | 16.3 | 1.63 | 6.52 | 8.15 | $350 | $2,852.50 |
| Jenelle Joyce | Paralegal | 339.4 | 33.94 | 135.76 | 169.7 | $75 | $12,727.50 |
| Lauren Adell | Paralegal | 34.9 | 3.49 | 13.96 | 17.45 | $75 | $1,308.75 |
| Andrew Sayre | Paralegal | 30 | 3.00 | 12.00 | 15.00 | $75 | $1,125.00 |
| Samantha Shapiro | Paralegal | 5.2 | 0.52 | 2.08 | 2.60 | $75 | $195.00 |

**TOTAL FEE AWARD    $272,631.25**

1    / / /

2    **IV.    CONCLUSION**

3        For the above reasons, the Court grants in part and denies in part Plaintiffs'

4    amended motion for attorneys' fees. IT IS HEREBY ORDERED that:

5        1.    Plaintiffs' amended motion for attorneys' fees (ECF No. 150) is

6            GRANTED IN PART and DENIED IN PART; and

7        2.    Plaintiffs are awarded $272,631.25 in attorneys' fees.

8

9    Dated:  June 2, 2025

10                                    _____
                                        CHI SOO KIM

11                                    UNITED STATES MAGISTRATE JUDGE

12

13

14    4, wagn1666.17

15

16

17

18

19

20

21

22

23

24

25

26

27

28